## ROBERTS *v.* HALSTEAD.

An entry of satisfaction by a mortgagee after he has parted with the obligation secured thereby, will not discharge the security, in favour of a prior purchaser, so far as respects the holder of such obligation.

And he may sue on an exemplification of the mortgage on which satisfaction is endorsed, and avoid the effect of this endorsement by proving an assignment of the obligation secured thereby, prior to the entry of satisfaction.

Where several obligations are secured by mortgage, and the dates of their maturity do not appear on the mortgage, it lies on the defendants to prove that all have not matured one year prior to the *scire facias* issued at the suit of the holder of one of the obligations which had matured at that time.

In error from the Common Pleas of Wyoming.

*July* 13.   This was a *scire facias* on a mortgage by Roberts to Halstead, dated May 12, 1837.   The mortgage was to secure a debt "unto S. Halstead, his executors, administrators, and assigns, in discharge of six separate obligations by Roberts under his hand," amounting in the whole to $1,100, and was conditioned to pay the said sum, "without any fraud or further delay, *and with* defalcation, deduction, or abatement of taxes."   Plea : *nul tiel record*, payment, and no lien.   The defence was taken by *terre tenants*.

On the trial, the plaintiff read an exemplification of this mortgage, in the margin of which was an entry of satisfaction by Halstead, by his attorney, on the 4th July, 1844.   He then proved a promissory note without date, drawn by Roberts in favour of Halstead, payable June 1, 1841, and proved that this was one of the *notes* recited in the mortgage.

He then, under exception, read the note and the exemplification.

He then gave evidence that this note was sold in 1839 to the party to whose use this suit was brought in the name of Halstead, the first transferee having noticed that it was secured by the mortgage.

The defendants offered to show a mortgage on the same lands between the same parties in 1848, and that various payments of taxes had been made under the provisions in the mortgage; but the evidence was rejected.

They then proved that the present *terre tenants* purchased the

land after the registry of the mortgage, and before satisfaction entered, and they also proved the authority under which satisfaction was entered on the mortgage.

The court (JESSUP, P. J.) instructed the jury that after Halstead transferred the note, he ceased to have any power to enter satisfaction in prejudice of the claim. As to the objection, that it did not appear that all the claims secured were due a year before suit brought, he said, the defendants should have pleaded that in abatement.

*Harrison Wright,* for plaintiff in error.—(The court told the counsel that he need not argue the first error, as they had held in Frear *v.* Drinker, at this term, that the plea of *nul tiel record* to a *scire facias sur mortgage* was a nullity.) If that plea does not avail us, the admission of the evidence in the first bill raises the same question quite as broadly. There was a most substantial variance between the writ and the copy of the mortgage produced : the latter contained the stipulation respecting deduction for taxes, and upon its face showed satisfaction duly entered long before suit brought ; the writ was silent as to both. The variance was a fatal one : 8 Watts, 181 ; 3 U. S. Digest, 175. The provision as to taxes was inartificially drawn, but it was plainly the intention of the parties to the mortgage-deed, that the taxes paid by the mortgagor should be deducted ; and the reason of the proviso was, that when the mortgage was drawn, a considerable amount of taxes was due on the land by Halstead, but the precise sum could not be ascertained, and it was part of the agreement that these should be paid, and also all that might be levied to the time when the *last note fell* due, out of the $1,100, purchase-money. This accounts for the peculiar stipulation, which we could not show, because we were put back at the very threshold. The court thought it a mistake of the scrivener, and rejected the offer. A stipulation for damages was held binding, Huling *v.* Drexel, 7 W. 126. This evidence was proper under the plea of payment, because it was in fact a payment *pro tanto* of the mortgage-moneys, and upon authority : 11 S. & R. 174. But it was not objected to as improper under the pleadings, nor was it rejected for that reason. Under our statute, the party should have proven himself entitled to issue his writ, by evidence of what did not appear on the mortgage, to wit, that the last payment had been due a year : 2 Rawle, 166. The satisfaction was made by the only one having authority, and was an end of the mortgage. Judgment, as is well settled, should

have been first taken against those not appearing, before trial and judgment against the others.

*Wright,* contrà.

*July* 5.   BELL, J.—The *scire facias* given by the act of Assembly is founded upon the mortgage, and not upon the registry of it. The plea of *nul tiel record* was, therefore, wholly inapplicable, and might have been treated as a nullity.   A judgment upon it was unnecessary, and its rendition does harm to no one.   So much was determined at the present sittings, a few days since, and, consequently, the plaintiff abandoned the first error assigned.

The record shows that the exemplification of the mortgage of the 12th of August, 1837, was read without objection.   After this, John F. Dupee was called, and proved the note held by the plaintiffs, was one of those recited in the mortgage.   The plaintiffs, then, according to the paper-book, offered "the mortgage, exemplification, and note," to which the defendant objected.   The objection having been overruled, the plaintiffs read the note in evidence, but not the exemplification of the mortgage, for that had been read before. The exception was urged here solely against the mortgage, on the ground of variance between it and the *scire facias*.   But having been given in evidence without objection, and not read under the exception, it is not applicable to the mortgage.   The reception of the note is not called into question.

What was the object of the defendant's offer, embraced in the second bill of exceptions, or what a mortgage, dated the 26th January, 1848, has to do with the controversy, it is not easy to divine.   If the exemplification offered was of the mortgage of August, 1837, before read, it does not show an agreement to defalk from the sum secured by the mortgage, all taxes that might be assessed on the mortgaged premises and paid by the mortgagor or his alienees.   Such is asserted to have been the meaning and intent of the parties to the mortgage, but it is by no means apparent on the face of the instrument itself.   But were this otherwise, surely notice of the intended defalcation should have been given under the plea put in.   Notice was not pretended, and for this reason alone, the evidence offered was rightly rejected.

The beneficial plaintiffs below, became the holders of the note in question before maturity, with notice that payment of it was secured by mortgage.   It has not been denied that from the moment they thus became owners of the note, they acquired an equitable interest in the collateral security of the mortgage, *pro tanto*.   The

assignment or transfer of each of the "obligations" mentioned in the mortgage, is a purchase, for a valuable consideration, of all the securities of the assignor, and of all his remedies: Jackson *v.* Willard, 4 Johns. 41; Donley *v.* Hayes, 17 S. & R. 400; 1 Madd. Ch. 435; and this, though the assignee was not aware of the existence of the mortgage, at the time he purchased the note: Betz *v.* Heebner, 1 Penn. Rep. 280. Pending the interest thus acquired, it was not competent for the mortgagee to cause satisfaction to be entered on the record of the mortgage, to its destruction as a security of the note-holders. The attempt to do so, necessarily failed as a fraud upon the trust created by the transfer of the notes. Had there been a *bonâ fide* purchaser of the mortgaged premises, after the entry of the satisfaction, and without notice of the outstanding notes, or, as was the case in Brown *v.* Simpson, 2 W. 233, were the attending circumstances such as led nobody to lean to the conclusion that the mortgage-moneys had not been paid, a countervailing equity would have sprung up for the protection of the innocent purchaser. But at the time of the contract of sale between Caleb Roberts, the mortgagor, and Daniel Roberts his vendee, the mortgage stood open on the record in full force and vigour. Consequently, the latter took the land subject to it and to all the rights dependent upon it. Whether he afterwards purchased Halstead's consent to enter satisfaction, in fraud of the outstanding notes, or what were the circumstances that led to the entry, does not appear. The record speaks of a broken contract for the sale of, *it is presumed,* the mortgaged premises, dated in 1839; but as no copy is given, we are of course ignorant of its contents and stipulations. Whether the existing mortgage was expressly provided for is not shown. Indeed, all we know of its contents is gathered from a remark occurring in the charge of the court, that at the time the contract was made, Daniel paid to Caleb $200 of the purchase-money, and gave a bond and mortgage to secure payment of the balance, $1,800, no part of which is shown to have been paid. So far as appears, then, Daniel, and those coming in after him, stand in the defenceless position of a purchaser with full knowledge of the mortgage as a subsisting lien, who, up to this hour, had not paid his purchase-money. Even supposing him ignorant of the outstanding notes, there is certainly nothing in his attitude, in this aspect of it, hostile to the equitable vantage-ground occupied by the plaintiffs. But had he shown payment of his purchase-money, subsequent to the entry of satisfaction of the mortgage, I am by no means disposed to concede that his position

would have been bettered. Holding his equitable title on the land subject to the mortgage, I think he would be held bound, before parting with his money on the faith of the entry, to inquire whether the "obligations" which the mortgage informed him were assignable, yet remained in the hands of the mortgagee, and if not, whether they had been paid? If he made the inquiry, and learned the truth, as he must have done, he is a participant in the fraud attempted by the mortgagee. If he failed to inquire, by *requiring the production* of *the notes at the hand* of *the mortgagee*, he is guilty of such *laches* as ought to postpone him to the equity of the plaintiffs. Either way his defence fails. But it further appears from the charge of the learned judge below, the defendants held in their hands the means of safety, and he can, therefore, have no reason to complain of a recovery against him.

The objection to that part of the charge which avers notice to Caleb Roberts of the transfer of the note to Durham and Martin, and information given by him to them, of its being secured by mortgage, though not founded in fact, is inefficacious as ground of reversal, for two reasons: First, the supposed fact, mistakingly stated by the court, is wholly immaterial. It touches not the rights of the parties in this controversy, for it is a matter of no moment whether Caleb had notice or not. Secondly, the misstatement of a supposed fact, by the court, is not a cause for reversal of a judgment.

The answer to the fifth assignment of error is, that it nowhere appears the whole amount of the mortgage-money had not been due for a twelvemonth before the impetration of the *scire facias*. This, I think, it was the business of the defendants to show, by way of answer to the plaintiff's action, as being a qualification of their *primâ facie* right to sue. Perhaps the court below was right in thinking it pleadable only in abatement, but of this it is unnecessary to speak. The seventh error was not urged.

Judgment affirmed.