## Matyuf v. Phoenix Insurance Co.

*Adolph L. Zeman,* for plaintiff.
*Donnan & Miller,* for defendants.

BROWNSON, P. J., April 18, 1933.—This case was by agreement brought before the court for hearing without a jury, a stipulation having been filed agreeing upon the facts, the same to be taken as if found by special verdict; the following being the statement of the

### Facts

"1. On May 7, 1932, the Phoenix Insurance Company, of Hartford, Connecticut, issued to Frank T. Matyuf and Julia Matyuf a policy of insurance, insuring against loss by fire a certain building on the west side of and known as No. 4 Black Alley, Canonsburg, to an amount not exceeding Twenty-five Hundred ($2,500.00) Dollars. A correct copy of the said policy of insurance is attached to the Statement of Claim filed in the above action and is hereby made part hereof.

"2. On May 30, 1932, the said building was totally destroyed by fire, the loss or damage resulting from the said fire being the sum of Thirty-five Hundred ($3,500.00) Dollars.

"3. On October 4, 1932, action of assumpsit was brought upon the said policy by Julia Matyuf, and subsequently, to-wit: November 25, 1932, the praecipe and statement of claim was amended by adding Frank Matyuf as a party plaintiff, he being the same person as Frank T. Matyuf.

"4. At the time of the issuance of the said policy and at the time of the fire and bringing this action, Frank T. Matyuf and Julia Matyuf were husband and wife.

"5. The premises, upon which the said building was situate, were conveyed by Pietro Matts, et ux., to Frank Matudo and Julia Matudo, his wife, (they being the same persons named herein and in the insurance policy as Frank T. Matyuf and Julia Matyuf) by deed dated April 12, 1920, recorded in the Recorder's Office for Washington County in Deed Book 478, Page 539, whereby the said grantees became and were, at the time of the issuance of the said policy of insurance and the time of the fire, and the time of bringing this action, the owners thereof by the entireties.

"6. At the date of the said fire, to-wit: May 30, 1932, there had been issued and there were outstanding a policy of insurance on the same building, issued by the Mercantile Insurance Company to Frank Matudo (he being the same person as Frank T. Matyuf), at his instance and request but without the knowledge or consent of Julia Matyuf, insuring Frank Matudo alone against loss and damage by fire to the said building in the sum of Three Thousand ($3,000.00) Dollars, a true and correct copy of which policy is hereto attached marked Exhibit "A", and is hereby made part hereof.

"7. All provisions of the policy sued upon, so far as relates to notice and proofs of loss, subsequent to the time of the fire, have been complied with.

"8. The fire, which occurred on May 30, 1932, whereby the building so insured was damaged and destroyed,

was caused by the wilful and felonious burning thereof by Frank T. Matyuf (husband of Julia Matyuf) and others acting with him.

"9. Julia Matyuf had no part in nor knowledge of the wilful and felonious burning of the said property and was not involved therein and was completely innocent thereof."

The stipulation then sets forth the questions of law arising on these facts, viz.: whether plaintiffs can recover jointly; whether there can be a recovery by Julia Matyuf alone, or by plaintiffs jointly for her use; whether, if there be a recovery, the amount of the policy, mentioned in paragraph 6, should be considered (under a clause in the policy in suit relating to other insurance) in fixing the amount of the recovery; and whether, if there be a recovery by Julia Matyuf alone, or for her use, it shall be for the whole, or for the one-half, of the amount of the loss. The forms and amounts of the several judgments enterable in the different events, depending upon the court's answers to the respective questions of law, are stated, and the right of exception and appeal is reserved by each party.

## Discussion

The wording of the standard form of fire policy, including the use therein of the terms "loss" and "hazards," would seem clearly to manifest the intent of the contract as being that it shall insure against losses resulting from the hazards of fire to which the insured property is involuntarily and necessarily exposed. These would include the danger of incendiarism committed by a third person for whose acts the assured is not responsible, and would include also a burning by the assured under the influence and as the result of insanity, that not being his responsible act, but being the product of a mental condition, coming upon him which takes away his capacity to act as an intelligent

and responsible human being, and it is thus an accidental destruction within the scope and intent of the contract (Showalter v. Insurance Co., 3 Pa. Superior Ct., 448, 450-452) ; but they would not include the voluntary burning by a sane assured, the destruction in such case not being the result of a "hazard" but a result which is the product of his own will, and therefore not constituting a "loss" within the proper meaning of that term as used in the insurance contract. However, independent of the presence in or absence from the policy of any particular words expressive of an explicit intent upon this point, it is generally agreed by the authorities that when the assured voluntarily and intentionally burns a building insured against fire, no recovery can be had upon the policy, this being the rule, even though there be no stipulation in the policy to that effect: 26 C. J. 347, §443. "Fraudulent losses are necessarily excepted from a fire policy upon principles of general policy and morals; for no man can be permitted, in a court of justice, to allege his own turpitude as a ground of recovery in a suit": 14 R. C. L. 1223; Rhode Island Ins. Co. v. Fallis, 203 Ky. 112, 261 S.W. 892, 37 A. L. R. 432. "Nor was it necessary to stipulate that the company should not be liable for the wilful destruction of the building by the insured. The parties are presumed to have contracted with reference to the principles of natural justice and well settled law, which forbid a man to avail himself of his own turpitude in a suit, or to contract for indemnity against his own fraud. The contract of fire insurance is a contract of indemnity against loss by fire, and the direct burning of the building by the wilful act of the insured is not one of the risks within the contemplation of the parties to the contract:" Rice P. J., in Showalter v. Insurance Co., 3 Pa. Superior Ct. 448, 449-50. Not only is such wilful burning by the assured, while sane, a fraud upon the insurance company, but it is an indictable crime: Act

of April 25, 1929, P. L. 767, (and see Commonwealth v. Lombardo, 12 Wash. Co. 160, 162;) and the maxim *Ex turpi causa non oritur actio* applies. "It cannot be that one of the risks covered by a contract of insurance is the crime of the insured. There is an implied obligation on his part to do nothing to wrongfully accelerate the maturity of the policy. Public policy forbids the insertion in a contract of a condition which would tend to induce crime and as it forbids the introducing of such a stipulation it also forbids the enforcement of a contract under circumstances which cannot be lawfully stipulated for": Burt v. Union Cent. L. Ins. Co., 187 U. S. 362; Smith v. Germania Fire Ins. Co., 102 Ore. 569, 202 Pac. 1088.

In this instance, we have the case of a building owned jointly by husband and wife as tenants by entireties, a policy of fire insurance issued to them jointly as such owners, and the destruction of the building by the wilful act of one of them (the husband) in causing it to be burned. In such case can the assured, or either of them, recover upon the policy?

It appears to be conceded by plaintiff's counsel that if the husband, Frank Matyuf, were suing alone, he could have no right of action; but it is contended that the fraudulent and unlawful character of his act, in burning the building, should not be allowed to affect the claim of indemnity against loss of the innocent wife, who had no part therein, and that plaintiff should be allowed to recover, either for the use of both (upon the ground that, the subject of the insurance being a building held by an indivisible title by entireties, the innocent wife is entitled to have the stipulated insurance money substituted in the place of the destroyed property, and held subject to the same kind of title, in accordance with the principle upon which the cases of Milano v. Fayette T. & T. Co., 96 Pa. Superior Ct. 310, and Magee v. Morton B & L Assn., 103 Pa. Superior Ct.

331, followed by Pastore v. Forte, 104 Pa. Superior Ct. 55, were based) ; or else for the use of the wife, to the extent at least of a proportionate part of the valued loss.

Interesting questions might be discussed as to whether, the contract of defendant being to pay to the husband and wife jointly any loss upon a destroyed building owned by them as tenants by entireties, and one of these payees not standing rectus in curia, there can exist, in any event, a separate right to recover in favor of the other. But we deem it unnecessary to discuss questions of legal procedure arising out of the mere fact that they were joint promisees in the contract made with them, and were therein designated as joint payees of whatever money defendant might become liable to pay (that is, the point as to whether an action at law, in assertion of the right of one of them to recover, can be based, under the circumstances of this case, upon a contractual promise to pay them jointly), because there are more fundamental points to be considered going to the question whether defendant is liable for anything, which we think will rule the case.

1. If this building had not been destroyed by fire, there would in no event be any liability of defendant to pay anything upon this policy. The claim which Mrs. Matyuf advances is therefore based upon such destruction. But the burning which produced that destruction was fraudulently committed by her husband, he being her co-tenant by entireties, a joint party, with her, to the contract sued on, and co-plaintiff with her in the action. She is endeavoring to assert against defendant, in the joint names of her husband and herself as co-plaintiffs, but either primarily or exclusively for her use and benefit, a liability which she says arose, and was imposed upon defendant, in consequence of the voluntary and wilful act of her co-plaintiff—an act which operated as a fraud upon defendant and was

intended to defraud it. Can she be heard to make such an assertion? Can she be permitted by this action to recover any part of the fruits of that fraud?

The cases of Milano v. Fayette T. & T. Co. and Magee v. Morton B. & L. Assn., supra, cited by her as showing that, notwithstanding anything her husband may have done, she is entitled to sue in their joint names for the purpose of recovering and preserving a fund in which she has rights as a tenant by entireties, are not analogous upon their facts. In those cases there was no question of a fraud committed by the husband against defendant. The right of action asserted in each suit was not based upon any such fraud, as having imposed liability upon defendant. Defendant in each case was admittedly liable to the husband and wife, and as they were tenants by entireties of the money payable, defendant was bound to make payment to them jointly; but instead of doing so, it undertook to make payment to the husband alone, thus aiding him to defraud his wife out of her rights respecting the money, and it was held that this was a mispayment and no defense to the action brought. On the other hand, in the present case the very foundation of the liability which is asserted against defendant is that such liability (which otherwise would not have existed at all) has been imposed upon it by the fraud of one of the plaintiffs. Granted that the wilful burning of the building by the husband was a fraud against the rights of the wife as his co-tenant, as well as a fraud against defendant, does this fact give her the right to recover from defendant the fruits of the fraud practiced against it? Where two parties have been defrauded by the same act, under circumstances such as exist in this case, do reason and public policy permit one of the defrauded parties to cast the resulting loss upon the other, by recovering indemnification from the latter, when the very foundation of the action is that the

liability sought to be enforced was fraudulently imposed upon defendant by the act in question, and especially when it is necessary to join as one of the plaintiffs in the action, because of his being one of the payees named in the contract, the person who committed such fraud?

It has been argued that the husband had no right or authority to destroy his wife's estate and interest as a tenant by entireties, and that his burning of this building, in such a way and under such circumstances as to prevent the recovery of insurance, would be destructive of her estate, and a wrong against her, unlawfully committed. This is true. But the question under consideration is not whether, if the husband has attempted to wrong her by doing something destructive of her property rights, she may assert such rights, and have them restored (if capable of restoration) to their original status or condition, as between herself and her husband, or as between herself and a stranger, but whether she may, when what her husband has done is a wrong against this defendant as well as against herself, maintain the present action, in the joint names of her husband and herself, to compel defendant (like herself an innocent and defrauded party, but not like herself in that it was not, and she was, an associate and co-tenant of and a joint contracting party with the perpetrator of the fraud) to indemnify against the consequences of the husband's fraudulent act, basing the action upon the specific ground that the fraud committed by her husband against defendant had itself the effect of giving rise to the asserted liabilty of defendant to pay. We do not believe that she can be permitted to make a burning, fraudulently done by her husband, the basis of a recovery in this action—can found her action upon, and recover the fruits of, a fraud committed against defendant by her co-plaintiff.

Moreover, it would seem to be a corollary of the legal

position assumed by plaintiffs (viz., that the husband had no right to impair or destroy his wife's interest in the indivisible estate by entireties, and therefore the value of the destroyed house should be recoverable and substituted in the place thereof, just as the money recovered in Magee v. Morton B. & L. Assn. as the withdrawal value of shares of stock owned by entireties, was substituted in the place of that stock), that such a recovery would necessarily enure to the use and benefit of the husband as well as of the wife, because in taking the place of the house it would become subject to the incidents of tenancy by entireties. On the other hand, to allow a recovery by or for the wife alone, to the extent of one-half of the value of the house, upon the ground that she is entitled to be indemnified for *her* loss, would be to substitute another contract in the place of the one made, which was for an insurance to protect the indivisible ownership by entireties.

Again, the apparent purpose of this arson being to turn the house into money at the expense of the insurer, the effect of allowing a recovery under the circumstances would tend to encourage crime.

2. There is, however, another fundamental question: is not a wilful burning by one of these plaintiffs, to whom jointly the insurance policy was issued, excluded not only by implication upon general principles, but also as to the effect of express provisions which it contains, from the risks which defendant insured against?

The policy contains (although not in the same order as they are given below) the following provisions:

"Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damage occurring . . . (b) while the hazard is increased by any means within the control or knowledge of the insured; . . ."; and

"This company shall not be liable for loss or damage caused directly or indirectly . . . by neglect of the insured to use all reasonable means to save and preserve the property at and after a fire . . ."

We have expressed the view that the term "hazard", as used in the policy, should not be interpreted as embracing a burning wilfully done by an insured owner. But suppose its meaning were not to be thus limited, and it should be given a more extended meaning as embracing any physical risk of destruction by fire, whatever the cause thereof; then clearly, when an insured owner kindles a fire within the building and wilfully and intentionally causes or allows that fire to be communicated to the structure, he is subjecting the building to an increased hazard, i.e., an enhanced possibility and probability of its destruction by fire, by an act that is within his own control and knowledge.

Again, as was said in Bellman v. Home Ins. Co., 178 Wis. 349, 189 N. W. 1028, 27 A.L.R. 945: "It requires no argument to demonstrate that one who wilfully sets fire to property, and leaves it to burn, breaches his agreement to 'use all reasonable means to save and preserve the property at and after a fire.' " In the case now before us, the whole of the damage to the building was the result of a breach of duty to the insurer by violating the two clauses above quoted, as well as the general duty of good faith.

In the case just cited, the building was fraudulently fired by only one of the parties to whom the policy had been issued. The property was held by partners as partnership property. One of the partners wilfully burned it, without the connivance or knowledge of the other. The policy was in the standard form, the same in its material provisions as that in the instant case. It was decided, as stated in the syllabus, that "an

innocent partner cannot recover on an insurance policy upon partnership property wilfully burned by his co-partner, especially where the policy provides that the insured shall use all reasonable means at and after a fire to preserve the property." The court held that the policy was a contract between the insurance company, of the one part, and the partners jointly, of the other part; that the effect of the provisions as to neglect to use all reasonable means, etc., was to impose upon the partners jointly the duty, and the condition, that they should use reasonable means to save and preserve the property at and after a fire, so that each became responsible not only for his own neglect (if any) to perform this duty, but also for any like neglect on the part of his co-partner. This seems to be a sound and reasonable view, consonant with justice and fair dealing. When a policy insures joint owners, and contains a condition that the insurance shall not embrace damage resulting from a voluntary increase of hazard, or neglect to use reasonable means to preserve the property, committed by "the insured," this condition manifestly is intended to apply to the joint tenants, as together constituting "the insured," and to impose upon them, by construction, or by implication, whichever expression may be preferred, a joint duty and obligation to observe good faith toward the insurer. If either of them fraudulently violated the good faith owing to the insured, I think both are chargeable with and affected by such violation, to the extent of its operating as an obstacle to recovery; and especially so where, but for the fraudulent breach of faith, there would have been no fire, and hence no liability of the insurer upon the policy could have arisen.

The case of American Fire Ins. Co. v. Hazen, 110 Pa. 530, appeared to recognize the soundness of the rule that if the partnership property, insured to the two partners, "was burned by one of the parties plaintiff"

(see page 531 for a statement of the defenses set up), this would be a defense to an action brought upon the policy by the partners as such.

Plaintiffs here are not partners, but they are intimately connected together as joint tenants by entireties, each of them being seized of the property as an indivisible whole, and either, when in the physical possession and control of the property, holding for and representing therein the other; and they were joint parties to the contract of insurance. I think the reasoning of Bellman v. Home Ins. Co. is applicable to these plaintiffs, and that for Mrs. Matyuf to say, "When my husband committed this fraudulent breach of the good faith which we jointly owed to our insurer, I was not present, and therefore did not and could not have any part in it," does not present a sufficient reason for sustaining the present action. She may have a remedy against her husband, but I do not think she can maintain the action she has brought, in the names of her husband and herself, against the insurance company.

There are a number of authorities holding that arson committed by an agent of the insured owner (Feibelman v. Manchester Fire Assur. Co., 108 Ala. 180, 19 So. 540; Meily Co. v. London & L. Fire Ins. Co., 142 Fed. 873, 875, affirmed in 148 Fed. 683; Kirkpatrick v. Allemannia Fire Ins. Co., 184 N. Y. 546, affirming 92 N. Y. S. 466), or by the latter's husband (Union Ins. Co. v. McCullough, 96 N. W. 79), even though he be acting also as the wife's agent in the management of her property and the conduct of her business (Plinsky v. Germania F. & M. Ins. Co., 32 Fed. 47), is one of the risks insured against when not explicitly excepted by the policy; and that the circumstance that the law of the particular forum, continuing to recognize the old common-law disability of a married woman to sue in her own name alone, may require, upon that ground,

the joinder with her, as plaintiff, of the husband, will not interfere with maintaining an action so brought to recover the loss occasioned by the husband's arson, because the money when recovered would belong exclusively to her, and a trustee could be appointed to protect it from the husband and prevent him from getting any of it (Perry v. Mechanics' Mutual Ins. Co., 11 Fed. 485.)

The principle of these cases is that neither a husband, as such, nor a husband or any third person who may be acting in the character of an agent to take care of property owned by a married woman or to render service in the carrying on of her business, becomes, ipso facto, her representative for the purpose of committing arson upon her property, and that therefore she will not be bound, nor will her rights as an insured owner be in any way affected, by the unlawful act which he so commits, unless it be shown that she was connected therewith as a particeps criminis, or that she has in some way rendered herself responsible for his act. But the facts of the instant case do not cause it to fall within that principle. The question here is not whether the husband in burning a building, owned by the wife, was acting in the capacity of agent or confederate of the wife, but whether the felonious burning of joint property by him was a breach of the obligations and conditions imposed upon them jointly by a contract to which they were joint parties and whereby they were insured jointly as the joint owners of the property. Defendant insured against the risk of a felonious burning by any person not a party to the insurance contract, whoever he might be, but did not insure against a wilful burning done by the two parties insured or either of them.

In Smith v. Germania Fire Ins. Co., supra, a fire policy was issued to Arthur White, with a rider making

the loss payable to Smith as mortgagee, "subject, however, to all the terms and conditions of this policy." It was held that this mortgagee rider, by subjecting the mortgagee to all the terms and conditions of the policy, made him a party to the contract, and that in the absence of any exceptions relieving him from the effect of any acts or defaults of the owner (there being in that instance no such exception), he was bound and affected by all the express and implied conditions of the policy, as fully as and jointly with the assured owner, and hence, upon its being found that the owner had wilfully, intentionally and fraudulently caused the building to be burned, the mortgagee would have no right to recover. In Schultz v. Pacific Ins. Co., 14 Fla. 73, where defendant pleaded that the master and part-owner of the insured vessel designedly cast her away, the court held that this would be a good defense as against the innocent co-owner, if established; though in that case the evidence failed to establish the fact pleaded.

Cases have been cited to show that a wife having an interest as tenant by entireties has an insurable interest in the property as a whole and may, upon a policy issued in her name alone, but evidently intended to insure to the extent of the entire value of the property, recover the whole loss. Some if not all or most of these cases proceed in part upon a presumption that the spouse procuring the policy represented and was acting for the other; see the cases cited in Trade Ins. Co. v. Barracliff, 45 N. J. L. 543, one of which is Harris v. York Mutual Insurance Co., 50 Pa. 341. Such a view would cause the money when collected to be held in trust for the use of both, and would make the spouse not named in the policy a party to the contract in effect, as being represented therein by a trustee. See what is said on this subject in Harris v. York Mutual Insurance Co., supra, at page 349. In none of the cases was

there any question of a fraudulent burning by the husband, and in the present case the husband and wife were joint contracting parties, with whom defendant dealt jointly, engaging to indemnify them jointly against destruction or damage to the property which they held together by an indivisible title.

It may be, if defendant, dealing with Mrs. Matyuf alone, had issued to her a policy insuring only against loss or damage to her interest, present and prospective, in the property held by entireties, that she could recover the full amount of the value of her interest that was destroyed by the fire, upon the ground that, her husband being a stranger to the contract and not concerned in the insurance, arson committed by him would be one of the perils insured against. But such is not the nature of the insurance contract in this instance.

Upon the case as a whole my views are: (a) That a contract of insurance is presumed to be, and the policy here in question, as a whole, imports that it is, based upon principles of natural justice and the observance of good faith toward the insurer by the assured owner, and therefore a felonious and fraudulent burning by such insured owner should not be deemed to be one of the risks within the contemplation of the parties and intended to be insured against; (b) that when two joint owners of property (especially if they hold by entireties) are jointly insured by one policy, it is implied, by the very nature and fundamental purpose of the insurance contract, that both of the assured shall observe good faith toward the insurer, and that a fraudulent and felonious burning by either of the joint owners who are jointly insured is not included within the contemplated risks; and (c) that in the present case this view is reinforced by express provisions of the policy making it a condition of the contract that the loss or damage for which the insurer is to be liable shall not embrace such as may result from

a voluntary increase of hazard, or a neglect to use all reasonable means to preserve the property against loss or damage at and after a fire, which provisions import and impose upon the assured, as a condition of the contract, a joint obligation for the observance of good faith by each of them and that neither of them shall wilfully and fraudulently cause the building to be destroyed by fire.

Accordingly, I reach the following

### Conclusion of Law

Plaintiffs are not entitled to recover, and judgment should be entered for defendant.

### Order

And now, April 18, 1933, it is ordered that the foregoing adjudication be filed of record; that notice thereof be given by the prothonotary to the counsel appearing of record and that if no exceptions be filed within 30 days thereafter, then judgment shall be entered for defendant.