Taylor, Appellant, *v.* Seckinger.

Argued June 13, 1962. Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*Herman Moskowitz,* with him *Paul M. Goldstein,* for
appellant.

*C. Laurence Cushmore, Jr.,* with him *White & Wil-
liams,* for appellees.

OPINION BY WOODSIDE, J., September 13, 1962:

The plaintiff in this equity case is appealing from
an order of the court below in favor of the defendants.

Willa Mae Taylor, the plaintiff, and her husband,
Paul Taylor, purchased, as tenants by entireties, prem-
ises at 122 Hobart Street, Philadelphia, in April 1951.
At the same time, they gave a mortgage on the premises
to Charles L. Seckinger and Anna M. Seckinger, his
wife, the defendants, for $3950. They also paid for and
delivered to the mortgagees a standard fire insurance
policy insuring the building against loss by fire in the
amount of $6000 and containing a standard mortgagee
clause in favor of the Seckingers.

On April 17, 1957, the building was damaged by fire.
Paul Taylor, husband of the plaintiff, was convicted

of arson in connection with the fire. The damage covered by the fire insurance policy was $2375. The Home Insurance Company paid this sum to the mortgagees, but only upon condition that they would assign the mortgage to it.[1] The mortgage assignment from the Seckingers to the insurance company was made October 16, 1957, and was recorded October 22, 1957. It contained a condition that the assignment was subject to the payment to the Seckingers of $752.98, being the unpaid balance of principal of the mortgage after crediting the amount paid the Seckingers by the insurance company. The mortgage was not in default on May 26, 1959, when the balance due thereon was $2537.84. The plaintiff then tendered to the defendants the difference between the balance due and the amount the Seckingers received from the insurance company, plus interest and costs of satisfaction, and demanded that the mortgage be satisfied. The Seckingers refused the tender and refused to satisfy the mortgage which had been assigned to the insurance company.

On December 3, 1958, the plaintiff filed this bill in equity asking the court to order the defendants to devote the fund received from the insurance company to repairing the damaged premises. The defendants

---

[1] The policy contains the following: "Whenever this company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim."

filed preliminary objections. The court's action on these objections was appealed to this Court. We struck part of the court's order, held part of it to be interlocutory, and returned the case to the court below with a procedendo. 191 Pa. Superior Ct. 70, 155 A. 2d 419 (1959).

Thereafter, the chancellor took testimony after which he found for the plaintiff and ordered the mortgage satisfied by the defendants. The defendants filed exceptions to this order which were sustained on the ground that the wife-plaintiff could not recover for damages to the real estate held by her and her husband as tenants by entireties because her husband was guilty of arson in connection with the fire causing the damage. The court below relied upon *Matyuf v. Phoenix Insurance Co.*, a 1933 case from Washington County, which at our request has now been reported in 27 Pa. D. & C. 2d 351.[2]

The court below eventually reached the correct result, but for the wrong reason. It based its conclusion on the determination of an issue not before it. The real purpose and effect of a mortgagee clause in an insurance policy, which the court below misconceived, are set forth clearly and accurately by President Judge SHEELY of Adams County in *Snyder v. Munroe*, 27 Pa. D. & C. 2d 32, 36, 37 (1960) as follows: "Where a policy is issued to the owner and a mortgagee clause

---

[2] See also *Kosior v. Continental Ins. Co.*, (Mass.) 13 N.E. 2d 423 (1938); *Bridges v. Commercial Standard Ins. Co.*, (Texas) 252 S.W. 2d 511 (1952); *Jones v. Fidelity & Guaranty Ins. Corp.* (Texas) 250 S.W. 2d 281 (1952); *Bellman v. Home Ins. Co.*, (Wis.) 189 N.W. 1028 (1922); *Federal Ins. Co. v. Wong et al.*, 137 F. Supp. (D.C. Calif.) 232 (1956); *Travelers Fire Ins. Co. v. Wright*, (Okla.) 322 P. 2d 417 (1958); *Miller & Dobrin Furn. Co. v. Camden Fire Ins. Co. Assoc.*, (N.J. Super.) 150 A. 2d 276 (1959); *Stitzinger et ux. v. Stitzinger Lumber Co.*, 187 Pa. Superior Ct. 453, 144 A. 2d 486 (1958).

is attached, the company is, in effect, making two contracts. First it is agreeing to indemnify the owner for the loss of the property, and second, it is insuring the creditor's security for his debt: Knights of Joseph B. & L. Assn. v. Mechanics' Fire Insurance Co., 66 Pa. Superior Ct. 90 (1917). If the circumstances are such that the company would be liable to the owner under the policy, a payment to the mortgagee would be in relief of the mortgage debt, but if, for any reason, the company would not be liable to the owner, its liability to the creditor would nevertheless continue. In the latter case, the liability to the creditor would be the same as though the company had insured the creditor's interest alone and, if it pays the creditor, it would be entitled to be subrogated to his rights: Molaka v. American Fire Insurance Co., 29 Pa. Superior Ct. 149 (1905); Utter, to use of Franklin Fire Insurance Co. v. Lewis, 10 Dist. R. 50 (1900); Freystown Mutual Fire Insurance Co. v. Whited, 41 D. & C. 605, 609 (1941).

"In the present case, the companies recognized and discharged their liability to the mortgagee, Mrs. Pryor, under the mortgagee clause of the policies. At the same time, they specifically disclaimed liability to the owners and, pursuant to the provisions of the policies, they took an assignment of the mortgage to their nominee as trustee for them. They thereby became creditors of the owners with the right to proceed to collect the mortgage debt. But, in any action instituted for the collection of the mortgage debt, the owners could assert any defense which they might have against either the original mortgagee or against the companies as assignees of the mortgage. Among the defenses available to the owners would be the defense that under the terms of the insurance policies the companies were liable to the owners as well as to the mortgagee and that, therefore, the payment by the

companies to the mortgagee was in relief of the mortgage debt, and since the debt was paid in full the mortgage should be satisfied."

In the above case, Mrs. Pryor was the mortgagee who was paid by the insurance company. The defendant was the nominee of the insurance company to whom the assignment of the mortgage was made by Mrs. Pryor.

In the case now before us, the assignment of the mortgage was made to the insurance company in October 1957, and recorded the same month. The bill in equity was filed in December of 1958, more than a year later. It is elementary that the assignee of the mortgage should be a party to any action to have the mortgage satisfied.

As stated by President Judge SHEELY above, if the insurance company is liable to the owner under the policy, the payment of the mortgagees is in relief of the debt, but if the insurance company is not liable to the owner, the mortgagors' liability to the creditor continues. The record shows that the insurance company denies liability, but the company is not a party to this case. The insurance company is the assignee of the mortgage, and the basic question is whether the plaintiff and her husband are liable to the insurance company as the assignee of the mortgage for that part of the obligation not paid by them to the mortgagees. This cannot be determined in a case to which the insurance company is not a party.

Any satisfaction of the mortgage by the Seckingers would not be binding on the assignee. *Roberts v. Halstead,* 9 Pa. 32 (1848); *Landis v. Robacker et al.,* 313 Pa. 271, 273, 274, 169 A. 891 (1933). Neither can the court direct that the mortgage be satisfied without the assignee having an opportunity to be heard.

The question decided by the court below was not properly before it without the insurance company being in the case. We are not here concerned with the liability of the insurance company to the plaintiff which was the question decided by the court below. It is evident, of course, that the defendants cannot be directed to satisfy the mortgage held by the insurance company.

Order affirmed.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I cannot concur in the conclusion of the majority that the issue as to the status of the payment of the insurance proceeds received by appellees (mortgagees) cannot be decided in this case. That is the only issue to be resolved. Although the chancellor ordered the satisfaction of the mortgage, the only prayer of the amended bill was that the payment of the fire loss to the appellees be declared to have been in relief of the mortgage debt. It is therefore irrelevant that the mortgagees are not now in a position to satisfy the mortgage. At the time the payment was received by the appellees, they were the mortgage creditors and legal holders of the instruments evidencing it.

Furthermore, I do not agree that the provision of the policy cited in the majority opinion altered the situation. That provision provides that whenever the insurer pays a loss to a mortgagee but claims that no liability exists to the mortgagor, it shall "to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, . . ." However, it "may at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and

shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities: . . ."

It is thus clearly stated that the insurer may elect to pay the fire loss and claim subrogation rights or buy the entire mortgage debt and interest without regard to the amount of or the legal obligation to pay the fire loss. It is equally clear that the insurer did not elect to exercise this option since it paid only the amount of the fire loss and permitted the mortgagees to continue to collect from the mortgagors the balance due on the indebtedness. The status of the insurer is, therefore, that of a subrogee to the extent of its payment of the fire loss.

As evidence of its subrogation rights, the insurer took an assignment of the mortgage and bond under a stipulation that the assignment was subject to the payment to the Seckingers of the balance of $752.98 still due them, and the Seckingers continued to collect from the mortgagors the established monthly payments of $43.85 plus one-half of the annual tax, or a total of $52.75 each month, until that balance was reduced to less than $175.53 at the time appellant made a tender of that entire balance together with satisfaction costs on June 25, 1959 (over two years after the fire loss had been paid to appellee). Thus appellees continued to be the legal owners of the mortgage and bond after they had received the proceeds of the policy, subject only to the rights of the insurer as subrogee; and the basic issue, viz., the balance due on the mortgage indebtedness, is still between the mortgagees and the mortgagor.

It must be recognized as established that the payment was made under the terms of the policy and the attached mortgagee clause *because of the fire loss.* What was the effect of that payment? Appellant contends that it was made for her benefit because of the loss of her property; appellees contend that it was for

their benefit alone to replace their lost security, and that the balance on the mortgage debt remains unchanged and unaffected by it. This issue remains unresolved. The majority says it cannot be resolved since the insurance company is not a party. This can readily be remedied by vacating the decree, reinstating the bill, and remanding the case for further proceedings after the insurer is made a party. Under Pa. R. C. P. 2232-(c), the court may order its joinder.[1] This should be done since the appellees are asserting equities of their subrogee as their defense; and further, since a subrogee stands in the place of his subrogor, it is imperative that it be joined herein and this entire matter concluded without additional litigation.

I would reverse and remand for further proceedings, and therefore dissent.

WATKINS, J., joins in this dissent.

---

[1] Pa. R. C. P. 2232(c). At any stage of an action, the court may order the joinder of any additional person who could have joined or who could have been joined in the action and may stay all proceedings until such person has been joined. The court in its discretion may proceed in the action although such person has not been made a party if jurisdiction over him cannot be obtained and he is not an indispensable party to the action.