**HAWKEYE–SECURITY INSURANCE CO.,**
a corporation, Appellant (Plaintiff below),

v.

Alfred APODACA and Byrlie Lee Apodaca,
Appellees (Defendants below).

No. 4307.

Supreme Court of Wyoming.

July 9, 1974.

F. M. Andrews, Jr., Riverton, for appellant.

Frank P. Hill, Riverton, for Alfred Apodaca, appellee.

H. S. Harnsberger, Jr., Riverton, for Byrlie Lee Apodaca, appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE, and McCLINTOCK, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

The defendants' home, insured by Hawkeye, burned, and the insurance company paid the insured defendants' note given to a mortgagee. The insurance company took an assignment of the note and mortgage, and brought an action on the note and for foreclosure of the mortgage. Defendants answered separately and each raised the issue of the insurance policy and counterclaimed for the loss in excess of that amount paid by the insurance company to the mortgagee. All parties moved for summary judgment, and ultimately the matter was submitted to the trial court for determination on the record. The trial court found against the insurance company on its claim against both defendants and for the defendant-Byrlie Lee Apodaca on her counterclaim, from which judgment the insurance company appealed. The two issues raised by the insurance company on appeal were that the defendants were barred from making any recovery because they failed to timely file proof of loss and they did not bring their action within one year after the loss, both as required under the terms of the policy.

The mortgagee, First Guaranty Savings & Loan Association, held a mortgage on defendants' home in the principal sum of $10,000.00. On January 1, 1969, the home

was substantially destroyed by fire and it was agreed that the loss to the building was $15,815.68, and contents loss was $3,703.06. Coverage under the policy was $15,000.00 for the building and $6,000.00 for the contents. The insurance company was timely notified of the loss and it employed Leonard Yost, the local representative of General Adjustment Bureau, to investigate the loss. He accompanied a local building contractor during an examination of the house, who estimated the damage to the home to be $15,815.68. Mrs. Apodaca submitted to Mr. Yost a list of household goods claimed to have been lost in the fire, the value of which she asserted to be $5,215.06.

The cause of the fire became suspect and the State Fire Marshal was called by the sheriff's office and made an investigation. As part of the insurance company's investigation of the cause of the fire the insurance company requested that the Apodacas and their two children submit to polygraph examinations at the insurance company's expense. They did so and a memorandum of the results was contained in the record. By way of partial explanation of the insurance company's concern about the origin of the fire it appeared that at the time of the fire the Apodacas were separated and involved in a rather bitter divorce proceeding commenced October 25, 1968, which ultimately led to a divorce being granted in May of 1970. Apparently each of the Apodacas may have made some comment to third persons that he or she thought the other one had set the fire just to spite the other spouse.

Mrs. Apodaca and her attorney made inquiry about payment of the insurance proceeds in response to which they were advised that they must comply with the provisions of the policy. In any event, no payment was made under the terms of the policy by the insurance company until September 10, 1969, when, upon demand of First Guaranty, it paid to the mortgagee the amount due under the mortgage and as provided in the loss payable clause of the policy. Upon payment to First Guaranty,

the insurance company took an assignment of the note and mortgage given by the Apodacas to the mortgagee. On May 18, 1970, the insurance company filed its complaint in which it demanded judgment against the Apodacas for the unpaid balance of the note assigned to it by First Guaranty and foreclosure of the mortgage. The insurance company alleged default on the monthly installment payments since December 23, 1968, and that the principal sum due was $9,645.79. The defendants answered separately and raised the question of the insurance policy, and counterclaimed for the difference between the face amount of the policy and the sum paid by the insurance company to First Guaranty together with the value of the contents. The insurance company answered and set up a defense to the counterclaim that defendant-insureds had failed to file a proof of loss as required by the terms of the policy which was a condition precedent to the right to receive payment, and, further, that the policy had a one-year statute of limitations clause for the bringing of any action.

The trial court found that the insurance company should take nothing by its complaint against either defendant-insured, and that the defendant-Byrlie Lee Apodaca have judgment against the insurance company in the principal sum of $2,908.83. This was apparently one-half of the insured loss sustained by the parties. The divorce decree awarded each party one-half of the chose in action on the insurance claim, but the husband had waived his right to any recovery under the policy.

### Proof of Loss

The insurance policy contained a provision that a proof of loss should be filed within 60 days of loss. The defendants did not file formal proofs of loss until after the action was commenced by the insurance company or about 16 months after the fire. The portion of the policy pertinent to our consideration and relating to the proof of loss provided that the insured should give immediate written notice to the insurance company of any loss, furnish a

complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed and within 60 days after the loss, unless such time be extended in writing by the company, the insured should render to the company a proof of loss, *signed and sworn to by the insured*, stating the knowledge and belief of the insured as to the time and origin of the loss, the actual cash value of each item and the amount of loss.

Our statute, § 26.1–330, W.S.1957, provides that the insurance company shall furnish proof of loss forms upon written request of any person claiming to have a loss under an insurance contract.

In ruling against the insurance company on the failure to timely file a proof of loss contention, the trial court held that because of the insurance company's own failures and shortcomings it could not be heard to complain of technical shortcomings of the defendants where the company failed to show any prejudice or hindrance of its ability to investigate the loss due to the late filing of the formal proof of loss. In January of 1969, Mrs. Apodaca furnished to the insurance company a complete written inventory of the personal items destroyed together with their valuations. She also asked in an accompanying letter if there was anything else she had to fill out or sign. On March 24, 1969, the insurance company's adjuster wrote her that a proof of loss would have to be filed. He again wrote Mrs. Apodaca on April 15, 1969, saying that per their previous conversation he was enclosing a copy of the policy and directing her attention to the proof of loss requirements, and indicating the insurance company still had not determined what action, if any, it would take. On September 9, 1969, Mrs. Apodaca's attorney made written inquiry to the insurance company on her claim. The adjuster wrote to him advising him that no claim had been filed and referred him to the conditions set forth in the policy. The insurance company did not furnish proof of loss forms to the defendants even though it could fairly be inferred that Mrs. Apoda-

ca's written inquiry asking if there was anything else she needed to fill out or sign was such a request. In any event, it clearly appears by the adjuster's letter to Mrs. Apodaca's lawyer that as late as September 19, 1969, the insurance company made no contention that claims would not be honored because of the failure to file the proof of loss. At that time the 60-day period for filing the proof of loss had long since expired—the fire having occurred on January 1, 1969.

The insurance company had hired its own adjuster who made a thorough investigation of the cause of the fire and determined the extent of the loss to the real property. Mrs. Apodaca filed an inventory with valuations for the loss of personal items. A formal proof of loss would not have revealed any information not already known to the insurance company. The insurance company actually had considerably more information than that which would be required by the proof of loss, and it had all the information required under the proof of loss within the 60-day period. As we said in Howrey v. Star Ins. Co. of America, 46 Wyo. 409, 28 P.2d 477 at 481, where the insureds sent a written notice of loss to the insurance company and the insurance company had its agent investigate the loss, the insurance company will be deemed to have waived the formal notice required by the policy. The formal proofs of loss signed and sworn to were ultimately filed so that if the insurance company determined the defendants were making false claims it could have instituted appropriate action against the defendants which, under the facts of this case, would appear to this writer to be the only reason for the requirement that a proof of loss be signed and sworn to by the claimants. The insurance company made no contention that the failure of the defendants to timely file the formal proofs of loss thwarted or hindered its cause. It would seem that the purpose of a proof of loss is to enable an insurance company to investigate a loss so that it can determine its rights and liabilities and prevent fraud and unjust claims from being asserted, and the insurance company made

no contention to the contrary. Sutton v. Fire Insurance Exchange, Or., 509 P.2d 418 at 419; 44 Am.Jur.2d, Insurance, § 1455, p. 320; 5A Appleman, Insurance Law & Practice § 3531, p. 500 (Rev.1970); 45 C.J.S. Insurance § 1006, p. 1231; and 14 Couch, Cyclopedia of Insurance Law (2d ed.) § 49:373, p. 15. Here the insurance company took the approach that the failure to timely file the proof of loss was of itself a bar to any claim by the insured while totally ignoring the fact that it had all the information required. As this court observed in 1893, the struggle on the part of the courts has been to protect policy holders from the literal operation of conditions designed for one purpose and used for another. Kahn v. Traders' Ins. Co., 4 Wyo. 419, 34 P. 1059 at 1070.

It is also noted that there is a different standard as to proof of loss requirements when there is a total loss because some of the policy requirements—such as the preservation of the property from further damage or the value of the debris—are not applicable. 45 C.J.S. Insurance § 1013, p. 1240. Here, as to insurance, there was a total loss of the building because the agreed loss was $15,815.68 while coverage under the policy was limited to $15,000.00.

Although the policy required the mortgagee to file a proof of loss in the event the mortgagor-insured failed to do so, the mortgagee did not file a proof of loss. The insurance company nonetheless paid the mortgagee nine months after the loss and solely upon the mortgagee's written demand for payment submitted to the insurance company eight months after the fire. The insurance company made no showing why it required no proof of loss from the mortgagee and yet insists that the insured must comply with the requirements.

Under all the circumstances we think the trial court was correct in ruling against the company on the proof of loss question.

### One Year Limitation

█ The policy provided that no suit or action upon a claim would be sustainable unless commenced within 12 months after the loss. Here the insurance policy, a copy of which was placed in evidence by the insurance company, was a material, integral and necessary part of the lawsuit both as to the insurance company and as to the insured defendants because recovery by any of the parties were predicated upon the policy. The fire and loss occurred on January 1, 1969, and the insurance company paid the mortgagee in September of 1969, and commenced its action on the assigned note and mortgage in 1970. The defendants filed their answers and counterclaims in June of 1970. The insurance company argued that defendants did not commence their actions within 12 months after the loss occurred and their counterclaims were therefore barred. The loss payable clause in the policy provided that if the insurance company claimed no liability existed as to the mortgagor the insurance company could recover from the mortgagor monies paid by it to the mortgagee. Although the policy provided that if the insurance company "shall claim that no liability existed as to the mortgagor" it would be subrogated to the mortgagee's rights of recovery to the extent of payment to the mortgagee, we think this means more than that the insurance company had to merely *claim* it had no liability to the mortgagor in order to be subrogated. The insurance company could be subrogated only if it was in fact not liable to the mortgagor. Taylor v. Seckinger, 199 Pa. Super. 262, 184 A.2d 317, 319; Insurance Company of St. Louis v. Lounsbury, Fla. App., 199 So.2d 730, 733; 6A Appleman, Insurance Law and Practice, § 4072, p. 201 (Rev.1971). The insurance company may have had some reason to suspect the cause of the fire,[1] however, it did not even claim that no liability existed as to the mortga-

---

1. The reports of the polygraph tests taken by the insureds and their children at the request and expense of the insurance company were admitted into evidence as exhibits of the insurance company at the pretrial conference without objection. Although the examiner

gor and it was therefore barred by its own terms in the insurance contract from recovery of the monies paid to the mortgagee.

█ While the trial court was correct in holding for the defendants in their defense to the insurance company's claim because of the cited specific provision of the policy and for the further reasons as hereinafter set forth, a different situation existed as to the defendant's counterclaim which asked for recovery over and above the insurance company's claim. While our Rule 13, W. R.C.P., (Rule 13, Fed.Rules Civ.Proc.), provides that a counterclaim may seek relief exceeding in amount or different in kind from that sought in the pleading of the opposing party, such a claim, because it asks for affirmative relief, casts plaintiff-type burdens upon the counterclaimant.

█ Under Rule 13, there is no general difference for purposes of pleading between setoff, recoupment, or independent claims in the sense that they all constitute counterclaims. The pleading of a counterclaim being a procedural matter does not affect the substantive question as to whether a limitation period bars the claim which is pleaded as a counterclaim. Thus recoupment, which by definition arises out of the transactional subject of the suit, when used only to defeat the claim sued upon is not barred by a limitation period if the main action is timely. Lamb v. Young, 250 Or. 228, 441 P.2d 616, 617; . Basic Boats, Inc. v. United States, D.C.Va., 311 F.Supp. 596, 598; City of Grand Rapids, Mich. v. McCurdy, 6 Cir., 136 F.2d 615. See the discussion in 3 Moore's Federal Practice, § 13.11 (2d ed. 1974), and 6 Wright and Miller, Federal Practice & Procedure, § 1419, p. 110 (1971). While the defense of recoupment exists as long as the main cause exists, the claim, as an independent action, would be barred by limitations. Francisco v. Francisco, 120 Mont. 468, 191 P.2d 317, 320, 1 A.L.R.2d

625; 16 A.L.R. 339. The purpose of limitation provisions is to bar actions and not suppress or deny matters of defense, and the general rule is that limitations are not applicable to defenses but apply only where affirmative relief is sought. Rochester American Ins. Co. v. Cassell Truck Lines, 195 Kan. 51, 402 P.2d 782, 786; Annotations 78 A.L.R. 1074 and 1 A.L.R.2d 666; 51 Am.Jur.2d, Limitations of Actions, §§ 76, 77, pp. 655, 656; 53 C.J.S. Limitations of Actions §§ 104, 105, pp. 1087–1089.

█ Applying then the general rule to the facts of this case, it is apparent the insureds were not barred by the one-year limitation period from raising the defense to the insurance company's claim, but they are barred from raising their affirmative claim unless they can show an exception to the general rule. The burden of showing an exception or an estoppel to prevent the running of a limitation period rests upon the party asserting the exception or estoppel. Title Guaranty Co. of Wyo. v. Midland Mortgage Co., Wyo., 451 P.2d 798, 802; Kennedy v. Lynch, 85 N.M. 479, 513 P.2d 1261, 1263. Only Mrs. Apodaca was granted affirmative relief under the counterclaim asking for recovery from the insurance company, and the discussion of that phase therefore applies only to her.

In discussing this point in her brief, defendant cited the extensive findings of the trial court, one case, and portions of an encyclopedia section. The trial court obviously recognized there was a difference between the issue raised by the insured which was by way of defense to the insurance company's claims, and that portion of the counterclaim which asked for something in addition to the defeat of the insurance company's claim. The trial court said:

"2. Equity will invoke the principal [sic] of mutuality to prevent unfairness. It is manifestly unjust to permit pursuance of interrelated and associated

---

stated in the report that in his opinion Alfred Apodaca's reactions indicated possible deception to questions dealing with the

fire, he clearly opined that neither Mrs. Apodaca nor her children had any involvement with the fire.

claims, and yet prohibit the interrelated defense, merely because the nature of the defense may invoke a different limitation. By reasonable extension the same rule is applicable to maintenance of the counterclaims."

As we have said, the trial court was correct as to the defense claim but no authority is cited nor do we find any for the theory of extension of the rule to counterclaims as advanced by the trial court. In the one case cited by the insured, Cain v. Bonner, 108 Tex. 399, 194 S.W. 1098, the Texas Supreme Court held that the defendant could apply usurious interest collected by the plaintiff to the reduction of the principal of the defendant's debt. That case supports the trial court's position as to the defense to the insurance company's claim, but it did not involve an affirmative counterclaim and is therefore not pertinent to the question at hand. The pronouncements contained in the citation of 28 Am. Jur.2d, Estoppel and Waiver, § 59, p. 678, are likewise inapplicable to the affirmative counterclaim question as presented in this case.

 We find nothing in the record upon which a waiver or estoppel could be asserted against the insurance company to the 12-month limitation period in which the insured was required to have brought her claim under the policy. In the usual estoppel or waiver situation the insurance company is precluded from raising the bar because settlement negotiations were taking place or because of some other action or inaction on the part of the insurance company the insured was misled into believing the claim would be paid and therefore did not bring an action within the limitation period. None of these factors existed in the case at hand. In response to inquiries by her and her attorney the insurance company wrote her two times and enclosed a copy of the policy, and answered the attorney's letter making reference to the policy.[2] In bringing the action against

the insureds the insurance company sought to subvert the terms of the policy as well as all equitable principles. However, as to the insured's affirmative claim against the insurance company, there has been no showing of impropriety on the part of the insurance company. While it might have been more helpful to the insured we find no violation on its part under the policy as to the insured's affirmative claims. The insured, Mrs. Apodaca, cannot recover on her counterclaim for damages over and above the amounts paid by the insurance company to the mortgagee. Therefore, that part of the judgment awarding her $2,908.83 upon her counterclaim is reversed, and the portion of the judgment denying the insurance company's claim and affording relief to the insureds as set forth in the judgment is affirmed.

Affirmed as modified.

---

2. Mrs. Apodaca's counsel at that time was representing her in the divorce action. Different counsel represented her in this matter.