Gardner *v.* Freystown Mutual Fire Insurance Company, Appellant.

2

Argued April 13, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

reargument refused, June 30, 1944.

*Douglass D. Storey,* with him *Frederick J. Templeton, Spencer D. Wareheim* and *Storey & Bailey,* for appellant.

*E. M. Biddle, Jr.,* with him *Mark E. Garber,* for appellee.

OPINION BY MR. JUSTICE DREW, May 22, 1944:

This action in assumpsit was brought by plaintiff, Park Gardner, to recover money alleged to be due on two fire insurance policies, each in the sum of $3,000, issued by defendant, The Freystown Mutual Fire Insur-

ance Company. The case was tried and a verdict returned for plaintiff in the sum of $6,040.20, being the amount of $5,700, with interest from the date of the fire. Its motions for judgment n. o. v. and for a new trial having been overruled, defendant took this appeal.

Plaintiff owned and operated a warehouse in the Borough of Mt. Holly Springs, Cumberland County, for the storage of grain which he accepted from various persons to whom he issued his negotiable warehouse receipts. He entered into a Uniform Grain Storage Agreement with the Secretary of Agriculture. By the terms and conditions of the warehouse receipts and this agreement, plaintiff obligated himself to insure for its full market value, in his own name, the wheat stored with him against loss or damage by fire. For this purpose he took out three fire insurance policies—one with The Insurance Company of North America and two with defendant—each of which insured "$3,000.00 On stock consisting principally of wheat . . .; also . . . on insured's legal liability for similar property held by the insured as follows, viz.: . . . on storage . . ."

The warehouse and almost all of its contents were destroyed by fire on October 2, 1942. There was stored in the building at that time 7,652.54 bushels of wheat, all of which was owned by four separate bailors. This grain had a value of over $9,000, the total amount of the insurance carried by plaintiff. The Insurance Company of North America paid plaintiff the full amount of its insurance without contest or deduction; but defendant, after receipt of notice of the fire and proofs of loss failed to make payment on its policies, and this suit resulted.

Defendant argues that the learned court below erred in not entering judgment in its favor, notwithstanding the verdict, because (1) the bailors of the grain are the real parties in interest and either should have instituted the action or at least have been brought on the

record as the beneficiaries of the trust; and (2) there was no evidence adduced by plaintiff as to the amount of his liability to the bailors whose wheat was destroyed by the fire. There is no merit in either of these contentions.

As to the first, Rule 2002, Pa. R. C. P. states: "(a) Except as otherwise provided in clauses (b), (c) and (d) of this rule, all actions shall be prosecuted by and in the name of the real party in interest, without distinction between contracts under seal and parol contracts. (b) A plaintiff may sue in his own name without joining as plaintiff or use-plaintiff any person beneficially interested when such plaintiff . . . (2) is a person with whom or in whose name a contract has been made for the benefit of another . . ." Here, plaintiff is the person with whom and in whose name the contract of insurance was made for the benefit of the bailors of the grain, and, therefore, plaintiff's cause of action unquestionably falls under clause (b) (2) of this rule. A bailee may insure in his own name the property in his possession, and in case of loss recover the full amount of his policy, holding all beyond his own interest in trust for his bailor: *Roberts v. Firemen's Ins. Co.*, 165 Pa. 55, 30 A. 450. While it is true that where the contract of bailment provides that the bailee shall insure the goods while in his possession, either bailee or bailor may maintain an action against the insurer on the policy for the full amount of the loss occasioned (cf. 6 Am. Jur. §299, p. 382; 8 Couch, Cyclopedia of Insurance Law, §§2058-2060, pp. 6731-2) ; nevertheless, it is equally true that a recovery by either for the full value would bar an action by the other. The same principle is applicable under the latter circumstance as that applied where property in possession of a bailee is damaged or destroyed by the negligence or default of a third person. In this respect, it was said, in *Smyth v. Fidel. & Dep. Co. of Md.*, 125 Pa. Superior Ct. 597, 605, 190 A. 398:

"There can be no doubt about the rule that a bailee in possession of personal property, is entitled, as against a third party, to recover the full value of the bailed property in case of its destruction or conversion by the third party, the bailee being liable over to the bailor for any damage recovered in excess of his interest . . ." See also *Juniata Accep. Corp. v. Hoffman,* 139 Pa. Superior Ct. 87, 11 A. 2d 494. In *Hardman v. Brett,* 37 F. 803, 805, 2 L. R. A. 173, the court said: "Inasmuch as the law does not allow a defendant to be vexed twice for the same wrong, a recovery by the person having a special property, and satisfaction by the wrongdoer, discharges the latter from all liability to the owner."

As to defendant's second contention, there is ample competent evidence to show the amount of plaintiff's *legal liability* to the four bailors. At the trial, the warehouse receipts given by plaintiff to the bailors, and the agreement with the Secretary of Agriculture, were admitted without objection by counsel for defendant. The warehouse receipt stated: "This grain is FULLY insured against loss or damage by fire . . . for the full market value thereof until the grain is loaded out." The agreement with the Secretary of Agriculture provides that plaintiff "will insure, and at all times keep insured, in his own name, all the eligible grain which is stored in the warehouse, for the full market value of such grain, against loss or damage by fire . . . and, in the event of any loss or damage to any grain in the warehouse, or to the warehouse . . . he will immediately notify the Secretary and the holders of the warehouse receipts representing the eligible grain which is stored in the warehouse, as the holders appear on the records of the warehouseman and he will promptly take the steps necessary to collect any moneys which may be due as indemnity for such loss or damage to eligible grain, and, as soon as collected, will pay to the holders of such warehouse receipts such moneys as may be col-

lected for loss or damage to grain represented by such warehouse receipts; . . ." It was further admitted by defendant's counsel that the 7,652.54 bushels of wheat in the warehouse at the time of the fire were owned by the bailors, were received from them under these contracts, and that their value was in excess of $9,000. Plaintiff also showed that all this grain was damaged or destroyed. Since plaintiff, by his contracts, increased his common-law liability to the bailors by agreeing to insure their goods, he became legally liable for the full value of the wheat lost. Cf. *Com. ex rel. Schwartz v. Bierly*, 339 Pa. 213, 13 A. 2d 714. We agree with the following statement of the court below in this respect: ". . . the defendant company herein insured the plaintiff's liability; the evidence shows the written contracts of bailment which made him liable for the full value of the wheat and the evidence further shows this value to have exceeded the amount of the insurance; hence, it would seem to follow that there is sufficient evidence of the plaintiff's liability to the owners of the wheat to justify a recovery in the instant case and that it is unnecessary to show the amounts paid by the plaintiff to the owners of the wheat or to show that judgments have been recovered against the plaintiff by the owners of the wheat."

In support of its motion for a new trial, defendant contends that the jury, in accordance with the instruction of the court, allowed interest from the date of the fire, instead of from the time when, under the terms of the policy, it was due and payable, to-wit, sixty days after receipt of proofs of loss. The policies contained the following standard provision: "The amount of loss or damage for which the Company may be liable shall be payable 60 days after proof of loss as herein provided is received by this Company . . ." The proofs of loss were received by defendant on November 24, 1942. It is stated in Joyce on The Law of Insurance (2d Ed.),

Vol. 5, §3458, pp. 5741-2: "The insurer is liable for interest upon the face of the policy from the time it was payable, not from the date of the fire; after the expiration of the stipulated sixty days from proof of the notice, and not from the time the loss is adjusted. If a time is fixed for payment, from that time, . . . . If the company waives the right to pay within the time fixed by denying all liability under the policy, interest will run from the date of loss . . . It does not run before the expiration of the sixty days after proofs of loss if the policy provides that payment be made within that time." Here defendant did not deny liability before the proofs of loss were filed nor before the expiration of the sixty-day period. Merely because there was a denial of liability after the sixty-day period following receipt of proofs of loss does not warrant an inference that defendant waived its rights under the provisions as to payment or was estopped to assert them. We agree that the court below erred in charging the jury to allow interest from the date of the fire.

The jury placed the liability on these policies at the sum of $5,700 (plus interest from the date of the fire), deducting the sum of $300 from the face of the policies. This was done, no doubt, as a result of evidence adduced by defendant that plaintiff negligently failed to salvage a portion of the wheat after the fire. It is perfectly safe to assume, therefore, that the jury, by its verdict, considered the sum of $300 as representing two-thirds of the value of such salvageable wheat, rather than its full value, as argued by plaintiff.

It would serve no useful purpose to send this case back for a new trial to correct this trivial error in allowing interest from October 2, 1942, the date of the fire, rather than from January 23, 1943, the date marking the expiration of sixty days after the filing of the proof of loss. The interest for which defendant was overcharged can be calculated with certainty and amounts

to the sum of $105.45. Therefore we will reduce the judgment by that amount, and affirm it, as modified.

Judgment, as modified, affirmed.