407 F.2d 1353
 KEYSTONE FABRIC LAMINATES, INC.
v.
FEDERAL INSURANCE COMPANY and Associated Mills,
International Stretch Products, Inc., Cane Fabrics, Inc.,
Rondo Mills Corp., Howard S. Baron, Inc., Dolly Madison,
Inc., Spencer Manufacturing Co., Irving S. Cohen, Inc. and
Feinberg Textile Corp.
Spencer Manufacturing Co., Appellant in No. 17332.
Cane Fabrics, Inc., Appellant in No. 17333.
International Stretch Products, Inc., Appellant in No. 17334.
 Nos. 17332-17334.
 United States Court of Appeals Third Circuit.
 Argued Dec. 17, 1968.
Decided March 13, 1969.
 
 James B. Doak, LaBrum & Doak, Philadelphia, Pa. (Stephen A. Cozen, Sydney C. Orlofsky, Philadelphia, Pa., Bernard J. Smolens, Philadelphia, Pa., on the brief), for appellants.
 Lloyd J. Schumacker, Schumacker & Lunkenheimer, Philadelphia, Pa., for appellee.
 Before SEITZ, ALDISERT and STAHL, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 This is an appeal pursuant to 28 U.S.C. 1292(b) from an interlocutory order granting partial summary judgment for plaintiff on the issue of priority on its claim in a diversity action. The issue of damages was reserved for trial.
 
 
 2
 Plaintiff, Keystone Fabric Laminates, Inc. (Keystone), brought this action in the district court against defendant, Federal Insurance Company, to collect for a claim which it made under a policy issued to it as bailee by the insurance company. The insurance company paid the sum due under the policy into the registry of the court and interpleaded the bailors, who sought the proceeds of the policy to the exclusion of the bailee.
 
 
 3
 Keystone was in the business of laminating fabrics furnished by its customers to a backing furnished by Keystone. In the course of its business Keystone had in its possession fabrics owned by its customers upon some of which fabrics it had performed services and had added material. In 1964 it took out an insurance policy with defendant, and attached thereto was the insuring agreement in question here, entitled, 'Bailee Customers Floater.'[1] It provided coverage up to $300,000 as follows:
 
 
 4
 '1. On all kinds of goods and/or articles accepted by the Assured for lamination and other similar processes; the property of customers while contained in the following premises * * *.
 
 
 5
 '2. This policy covers direct physical loss or damage to the insured property from:
 
 
 6
 '(a) Fire arising from any cause whatsoever * * *.'
 
 
 7
 The dispute centers around the following sections of the floater: Paragraphs A and B of the 'Conditions', which provide:
 
 
 8
 'A. Loss, if any, at the option of this Company to be adjusted with and paid to the Insured for account of whom it may concern, or adjusted with and paid direct to the Insured's customers.
 
 
 9
 'B. The measure of loss shall include the Insured's charges that have been earned on property on which a loss is paid hereunder, excluding such charges that were uncollectible before the property loss.'
 
 
 10
 and Endorsement Number One, which reads:
 
 
 11
 'It is agreed that the named assured shall obtain from customers or fix a specific valuation on the insured property, and this Company shall not be liable for more than the respective valuation declared by customers or fixed by the named assured, nor in any event beyond the actual cash value (meaning the cost to repair or replace the property with material of like kind and quality) of the insured property at the time any loss or damage occurs, and the loss or damages shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation however caused.'
 
 
 12
 In 1965, a fire occurred at one of the premises covered by the policy and destroyed all of the goods of Keystone's customers. Plaintiff filed a claim with defendant for priority in payment under the policy for its earned charges for processing done on some of the destroyed goods ($43,077.40). The customers of Keystone also claimed the proceeds of the policy ($300,000) in order to cover at least partially the value of their goods lost, plus the earned charges on them, a total of $716,111.80. After the insurance company denied its claim, plaintiff brought this action, and, when the district court granted partial summary judgment for plaintiff, three of the defendants below took this appeal.
 
 
 13
 The sole issue presented to this court is whether plaintiff is entitled to be paid in full for its earned charges out of the policy proceeds before the claims of the customers are recognized. We think that a resolution of this issue turns solely on whether or not plaintiff's interest in his customers' goods (to the extent of the earned charges) is covered by the language of the policy. If we find its interest to be covered (absent specific language in the policy to the contrary), then as a matter of Pennsylvania law,[2] Keystone as bailee has first claim to the proceeds. The Pennsylvania Supreme Court most recently made this clear in Gardner v. Freystown Mutual Fire Ins. Co., 350 Pa. 1, 37 A.2d 535, 154 A.L.R. 1351 (1944), when it said: 'A bailee may insure in his own name the property in his possession, and in case of loss recover the full amount of his policy, holding all beyond his own interest in trust for his bailor.' 37 A.2d at 536.[3]
 
 
 14
 Appellants contend that they and the other customers who lost goods in the fire are the sole beneficiaries of the policy and as such are entitled to all the proceeds. They point to the title of the floater (Bailee Customers Floater), the coverage provision and Endorsement Number One, none of which indicates that the bailee's interest is covered. As to the significance of Conditions A and B, they claim that the two paragraphs merely serve to measure the customers' loss. Moreover, they say that the language in Paragraph B that reads 'property on which a loss is paid hereunder' indicates by the use of the word 'paid' instead of 'payable' that the customers are to be actually paid the proceeds and that the claim for the charges is to be adjusted thereafter with the individual customers.
 
 
 15
 We cannot accept the construction of the policy urged by appellants. In the first place, Condition A does not bar a recovery by Keystone under the policy for its earned charges, but rather serves to give the insurance company flexibility in adjusting the claims under the policy. Secondly, we do not agree that the purpose of Condition B is merely to measure the bailors' loss, but rather it serves to measure the bailee's loss. We take note of the fact that it was the bailee who took out the policy with the above provision and paid the premiums, and it is in this light that we must construe Condition B. Viewed in this perspective, we think that by Condition B plaintiff sought to protect itself against a legitimate economic risk. Appellants' construction of Condition B, on the other hand, would result in all the proceeds being turned over to the bailors. Plaintiff presumably would have to negotiate with each bailor individually and very possibly resort to litigation in order to recover for the charges to which it was entitled. Such a result would be unreasonable in the premises.
 
 
 16
 We recognize that it is somewhat strange to include what appears to be a coverage provision in the printed Conditions of the policy. However, the language of Condition B, unless it is considered to be a nullity, clearly covers plaintiff's interest in the goods belonging to the bailors. Moreover, even if we assume that Condition B is not a coverage provision, policies taken out by bailees to cover goods held in bailment without language covering the bailee's interest have long been construed to cover the bailee's charges as well. See Home Ins. Co. v. Baltimore Warehouse Co., supra.[4] Finally, we do not think that the question of who gets the proceeds attributable to the earned charges can here turn on whether the word 'paid' was used in the policy instead of 'payable.'
 
 
 17
 Appellants alternatively suggest that Condition B was revoked by Endorsement Number One. They claim that the language in the Endorsement setting the limit for the liability of the insurance company as the value of the insured property at the time it was accepted by the bailee necessarily excluded any earned charges, which would increase the value beyond the limit of the Endorsement. We cannot agree with appellants' reading of the Endorsement. It is axiomatic in contract law that two provisions of a contract should be read so as not to be in conflict with each other if it is reasonably possible. We think the correct reading of Endorsement Number One is that it does not concern the earned charges, which are readily computable, but serves only to simplify the otherwise difficult problems of when and how to value the property covered by the policy.
 
 
 18
 Finally, appellants claim that to give plaintiff priority would defeat the purpose of the policy, viz., to protect the customers from loss. We think, however, that the policy was not taken out any more for the customers benefit than for the plaintiff's own protection. In such circumstances, we can find no compelling purpose behind the policy which may be defeated by granting plaintiff the priority it seeks.
 
 
 19
 We therefore hold that the insurance ance policy on its face provides Keystone a basis for its claim to the earned charges and that, as a matter of Pennsylvania law, plaintiff is entitled to priority in payment over appellants.
 
 
 20
 The question of priority here being one of law and undisputed fact, it was a proper subject for summary judgment. The order of the district court will be affirmed.
 
 
 
 [1]
 Subsequent references will be made only to the floater and its provisions
 
 
 [2]
 Plaintiff in his brief assumes that Pennsylvania law controls, and defendants have made no claim to the contrary. There being no dispute as to which state law controls, we will apply the law of Pennsylvania, which is the law of the forum
 
 
 [3]
 See Roberts v. Firemen's Ins. Co., 165 Pa. 55, 30 A. 450 (1894); In Re Podolsky, 115 F.2d 965 (3rd Cir. 1940); and see Home Ins. Co. v. Baltimore Warehouse Co., 93 U.S. 527, 23 L.Ed. 868 (1876); California Ins. Co. v. Union Compress Co., 133 U.S. 387, 10 S.Ct. 365, 33 L.Ed. 730 (1890). We find no merit in appellants' distinction between the situation where the bailee's interest covered by the policy is in goods which it actually owns and the situation where as here the bailee's interest is in the form of a charge on the bailors' goods. The cases make no such distinction, and the bailee in both cases is protecting its own pecuniary interest
 
 
 [4]
 See also London and Northwestern Railway Co. v. Glyn, 1 Ell. & Ell., Q.B., 652 (1859), where the Court said: 'An insurance simply upon 'goods' would have covered the plaintiff's interest (earned charges) in the goods.'