**KINGSTON DODGE, INC., Plaintiff,**

v.

**CHRYSLER CORPORATION, Defendant,**

and

**Philadelphia Region Dodge Advertising Association, Inc., Intervening Defendant.**

Civ. A. No. 77–233.

United States District Court, M. D. Pennsylvania.

April 19, 1978.

Mack & Meyer, John G. Swatkoski, Wilkes-Barre, Pa., for plaintiff.

Morris R. Brooke, Drinker, Biddle & Reath, Philadelphia, Pa., for defendant.

Harry J. J. Bellwoar, III, Bellwoar, Rich & Mankas, Philadelphia, Pa., for intervening defendant.

### MEMORANDUM

HERMAN, District Judge.

Kingston Dodge, Inc., Plaintiff, an automobile dealer in the Boro of Kingston, Luzerne County, Pennsylvania, executed in 1966 a Direct Dealer Agreement with Defendant, Chrysler Corporation, to buy Dodge automobiles from the Defendant and to sell them in its Sales Locality and to promote there the sale of Chrysler Products. This agreement provides in pertinent part:

> "DODGE, in promoting sale of its products by DIRECT DEALER and other Dodge dealers, will seek to advertise in the most effective manner to develop

public interest and confidence in its dealers and products.

DIRECT DEALER, in advertising in support of DIRECT DEALER'S selling and servicing Dodge products, agrees to advertise only in a manner that will develop customer confidence in DIRECT DEALER and Dodge products, and will not use any advertising tending to mislead to deceive the public. DIRECT DEALER agrees to discontinue any advertising that DODGE may reasonably find to be injurious to DODGE'S business or likely to deceive the public."

Contemporaneously with the execution of the Direct Dealer Agreement with Chrysler, Plaintiff also entered into an agreement with the Philadelphia Region Dodge Advertising Association, Inc., hereinafter referred to as "DAA". This agreement, hereinafter referred to as the "Membership Agreement", provided that Kingston Dodge would pay to DAA for all new passenger cars and trucks purchased from Chrysler an amount not less than $15 per car or truck[1] for the purposes of advertising Dodge products, and that for the convenience of the parties DAA could authorize Chrysler to collect the said amount from Kingston and forward the amount collected periodically to DAA.

Paragraph 5 of the Membership Agreement provides in part that:

"In consideration of all other members similarly agreeing Direct Dealer agrees not to withdraw from membership in DAA except with the consent of a majority of its members or in case of dissolution of DAA. . . . "

Paragraph 6 further provides that:

"Direct Dealer agrees to be bound by the by-laws of DAA and by any amendments thereto not inconsistent with the provisions of this membership agreement."

In the By-Laws under the paragraph entitled "Eligibility of Members" there is a clause which provides "said applicant for membership is bound by the . . . by-laws of the corporation [i. e., DAA], and by which he agrees, in consideration of all other members signing similar agreements, not to withdraw from the corporation for a period of twelve months following written notice to the Board of Directors of his intent to withdraw." The paragraph following, entitled "Termination of Membership" provides for termination only in the event the dealer terminates his relation of Direct Dealer with Chrysler.

The By-Laws provided for the expenditure of the money collected from its members for the purchase of various types of advertising and promotional activities "to promote the sale of Dodge Motor cars and/or trucks by authorized Dodge dealers in the Philadelphia Dodge Sales Region".[2]

Plaintiff's complaint against Chrysler alleges that some time prior to 1976 disagreement developed between Kingston and DAA "regarding the *manner* and *method* utilized by DAA in its advertising program and specifically, Plaintiff charged DAA with unfair and inequitable distribution of *over abundant funds* in Plaintiff's account and alleged failure of any benefits derived by Plaintiff's association with DAA and that said charges were therefore in violation of the implied consideration for membership in the DAA organization.

Chrysler denied knowledge or information sufficient to form a belief as to the truth of these averments but DAA, who was allowed to intervene denied all of the allegations in paragraph 8 of the complaint except that it acknowledges that a disagreement did in fact develop. Then at great length DAA explained the advertising program that had been followed alleging that the said program was beneficial to Plaintiff and fair to him and to his sales in the area and averred that over $10,000 of the "over abundant funds" were returned to Plaintiff in 1976 and 1977 and further that Plaintiff took an active part in DAA's April, 1977 program in which over $130,000

---

1. For the period involved here the amount has generally been $25 per car or truck.

2. The abbreviated record does not indicate that DAA fails to advertise as the By-Laws provide.

was expended, much inuring to Plaintiff's benefit.

On February 19, 1976 Plaintiff by letter to Defendant with a copy to DAA Wilkes-Barre Representative, notified Chrysler that it intended to withdraw from its agreement with DAA and requested Chrysler to discontinue charging Plaintiff the $25 per car for advertising, which sum it then forwarded to DAA. On July 16, 1976 Plaintiff again notified Chrysler with a copy of the letter to the representative of DAA that it intended to terminate its relationship with DAA and again requested Chrysler to cease charging the $25 advertising charge.

When Chrysler refused to accede to Plaintiff's requests this suit was instituted requesting a Temporary Restraining Order, Preliminary, and Permanent Injunction enjoining Chrysler from charging and collecting the said advertising fees and forwarding them to DAA and for damages and other equitable relief. Plaintiff also seeks a declaratory judgment that no contractual agreement exists between Plaintiff and DAA and that Chrysler abide by the terms of the Direct Dealership Agreement.

The Motion for Temporary Restraining Order and Preliminary Injunction were refused and the parties entered into a stipulation by which it was agreed by all three parties that the two agreements as herein recited do exist and that the relevant terms are as stated in this memorandum, that the Plaintiff attempted to withdraw from the agreement with DAA as recited in Plaintiff's letters of February 19, 1976 and July 16, 1976; that thereafter the Board of Directors of DAA conducted a poll of its membership and 17 members agreed to Plaintiff's withdrawal and 55 voted against such withdrawal and one member abstained. It was further stipulated that Chrysler continued to charge Plaintiff and remit to DAA the $25 per vehicle advertising fee.

Although the complaint also raises a question of the failure of the DAA to supply an audit of its funds to Plaintiff on request, that matter is not now before us.

The sole question is: Can the Plaintiff without the consent of a majority of the members withdraw from membership in DAA in the face of Section 5 of the Membership Agreement previously quoted herein and in view of Article III of the By-Laws. Our answer must be that it cannot.

While Plaintiff acknowledges that the case of *Leon v. Chrysler Motors Corporation*, 358 F.Supp. 877 (N.J.Dist.1973) affirmed 474 F.2d 1340 (3d Cir. 1973) (hereinafter discussed in detail) is authority supporting the contractual validity of a clause such as that contained in Section 5 of the Membership Agreement here. Plaintiff finds support in the fact that unlike the *Leon* case, the By-Laws in the instant case to which Plaintiff has agreed to be bound (if not inconsistent with the Membership Agreement), contain the additional provision for a 12-month written notice to the Board of Directors of intent to withdraw.

We do not believe that the provision in the By-Laws changes the principles set out in the *Leon* case and conclude that that case controls this case.

■ It is a general principle of contract law that all writings forming a part of the same contract are to be interpreted together, P.L.E. Contracts § 157, *Capital Bus Co. v. Blue Bird Coach Lines Inc.*, 478 F.2d 556 (3d Cir. 1973), and if there appear to be repugnant clauses they must be reconciled if possible and an interpretation of one part will not be given which will annul another part. P.L.E. Contracts § 159. *In Re Binenstock's Trust*, 410 Pa. 425, 1963, 190 A.2d 288. A clear provision cannot be overcome by a doubtful one, *Harrity v. Continental-Equitable Title & Trust Co.*, 280 Pa. 237, 124 A. 493, 1924. It is axiomatic that two provisions of a contract should be read so as not to be in conflict with each other if reasonably possible, *Keystone Fabric Laminates, Inc. v. Federal Insurance Co.*, 407 F.2d 1353 (3d Cir. 1969).

■ Here, contrary to the urging of Plaintiff, we find no ambiguity sufficient to call upon the rules of construction above set forth, but if we did find such an ambiguity

the clauses are readily reconcilable. The Membership Agreement is explicit in stating that the agreement of Plaintiff not to withdraw from membership is in consideration of similar agreements of other members not to withdraw without the consent of a majority of the members. The By-Laws merely add an additional requirement that before withdrawal a member must give 12 months notice to the Board of Directors of his "intent" to withdraw. This does not seem to the Court to change the requirement of the consent of the majority of the members.

Since we find no irreconcilable differences between the agreement and the By-Laws this brings us to a consideration of the. Leon case. There, as in the instant case, the complaint was against the car manufacturer, Chrysler, but the real relief sought by the Plaintiff was to terminate his membership in an advertising association.[3] There the requirement of the consent of a majority of the members before any member could withdraw was contained not only in the agreement between Leon and the advertising associations but also in the association's by-laws. This requirement was practically identical with that contained in the Agreement between Kingston Dodge and DAA. As Judge Coolahan pointed out in the Leon case, each member of the advertising association is for all intents and purposes "locked into the Association perpetually" unless he can persuade a majority of the members to vote in his favor and against their own economic interest. As the Leon case also notes that to permit a member to withdraw against his solemn promise, which incidentally was the bargained for consideration, would not only harm the remaining members but would enable the withdrawing member to still reap the benefits of the association's mass advertising.

Plaintiff does not and indeed could not contend that the agreement is unconscionable nor does he contend that he executed the agreement in error or that Chrysler required him to join DAA.

As Judge Coolahan said in the Leon case, Plaintiff is "unable to cite a single reason, cognizable in law or equity, why the Court should extinguish . . . [Plaintiff's] voluntarily incurred contractual obligation. That obligation may not now be dishonored simply because Plaintiff . . . [has] become convinced . . . [it] made a poor bargain".

An order will be entered denying the injunction and declaring judgment in favor of the Defendants.

---

**3.** In the Leon case Plaintiff actually belonged to two such advertising associations.