**Francis GIOVANNITTI, an individual, Plaintiff,**

v.

**NATIONWIDE INSURANCE COMPANY, an Ohio corporation, Defendant. (Two Cases)**

**Civ. A. Nos. 85–68, 86–270.**

United States District Court, W.D. Pennsylvania.

July 1, 1988.

Maurice Nernberg, Jr., Nernberg & Laffey, Pittsburgh, Pa., for plaintiff.

Daniel Weis, Weis & Weis, Pittsburgh, Pa., for defendant.

## OPINION

COHILL, Chief Judge.

This case is before us this time to resolve questions concerning the proper verdict amount owing from defendant Nationwide Insurance Company ("Nationwide") to plaintiff Francis Giovannitti. A jury rendered a verdict in his favor with respect to his liability claims against Nationwide. Because of previously unresolved legal issues relating to the proper measure of damages, though, the jury was instructed to respond to special interrogatories concerning plaintiff's damage claims; such responses were designed to provide a factual basis for the

measure of damages which we award. Having made this determination, as explained below, we will enter judgment in favor of plaintiff Francis Giovannitti and against defendant Nationwide in the amount of $203,119.56, plus pre- and post-judgment interest at the rate of six percent per annum.

*Background*

On August 21, 1984, a fire damaged property at 439 Market Street in the City of Pittsburgh, Pennsylvania. Plaintiff owned this property, but had leased it to others for the operation of a restaurant, then known as Alexander's Graham Bell.

Nationwide had previously issued a fire insurance policy to the plaintiff, attached as Exhibit A to plaintiff's complaints (the "Insurance Policy"), which covered the Market Street property and its contents. Under the policy, Mr. Giovannitti is entitled to recover the actual cash value of insured property at the time of the loss, with the qualification that such recovery cannot exceed the amount it would cost to repair or replace such property with materials of like kind and quality. Insurance Policy, § VII (Valuation). The policy further limits any recovery in this regard to $577,000. *Id.*, at § I (Limit of Liability). The policy also contains a Loss of Rents Endorsement which permits recovery by the lesser amount of $100,000 or the actual loss of rents during a reasonable period of repairs. *Id.*, Loss of Rents Endorsement.

Plaintiff submitted a timely proof of loss under this policy after the fire, but his claim was rejected due to Nationwide's assertion that the fire was intentionally set by the plaintiff alone or in conspiracy with others.

After this denial of his claim, plaintiff filed suit against Nationwide in the above-captioned cases, seeking damages for breach of the insurance contract and a declaratory judgment defining the rights and obligations of the parties under the terms of the policy.

The case proceeded to a jury trial on March 17, 1988. The parties had agreed in advance to bifurcate the trial so that the jury would first make a determination on liability and then consider plaintiff's damage claims, if necessary. After five days of trial, the jury retired and returned a verdict on liability in favor of the plaintiff on March 23, 1988.

The trial was then reconvened with the same jury on April 11, 1988 for consideration of plaintiff's damage claims. Because of legal issues concerning the proper measure of damages, which we did not wish to resolve in haste, special interrogatories were prepared for the jury. These interrogatories were designed to elicit factual responses from which we could, hopefully, mold a final verdict, depending on the measure of damages we determined to be correct.

More specifically, the Court was and is faced with the issue of whether or not the plaintiff can recover consequential damages in his action for breach of contract, such consequential damages possibly allowing recovery of damages beyond the limits of the insurance policy. In particular, plaintiff argues that, in addition to the recoveries permitted under the policy, he should also receive, as consequential damages, the increase in the cost of repair and replacement of the property resulting from economic inflation, deterioration of the building and the change in building codes during the delay in his receipt of the insurance proceeds. Similarly, plaintiff contends that he should also be compensated for all rents lost between the time of the fire and the time the jury returned with a verdict in his favor. At the very least, plaintiff urges that the repair period circumscribing his entitlement to loss of rents should be measured with respect to present repairs rather than the time of repair needed right after the fire. In addition, he seeks consequential damages for: (1) the depreciation in the value of the Market Street property since the time of the fire, due to declining economic conditions in the area, *see* Statement of Francis A. Giovannitti, attached to Plaintiff's Pretrial Statement; (2) clean-up costs after the fire, for which he was billed by the City of Pittsburgh; and (3) interest penalties and attorney's fees which the plaintiff incurred due

to his inability to pay a mortgage on the property after the fire loss and in seeking to prevent foreclosure on this mortgage.

The defendant argues in response that the insurance policy is a contract to pay a fixed sum, and, therefore, when Nationwide is liable for a breach due to a failure to honor an insured's claim and pay the amount due, an insured is only entitled to that fixed sum plus interest for the delay in payment.

As previously mentioned, we decided to defer ruling on this dispute. However, mindful that under Pennsylvania law consequential damages can be recovered if "they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract," *Mellon Bank, N.A. v. Aetna Business Credit,* 500 F.Supp. 1312, 1317 (W.D.Pa.1980), we determined prior to the damage portion of the trial that if consequential damages are proper in this case, Nationwide could have reasonably foreseen as a matter of law that the repair costs and the period of repair for the Market Street property might increase due to inflation, deterioration of the building and building code changes during the time of any delay in payment.

As to whether Nationwide could reasonably foresee that rental loss would continue to occur beyond a reasonable period of repair and throughout any delay in payment and also that plaintiff would suffer the other consequential damages claimed, however, we found that these questions of reasonable foreseeability should be resolved by the jury, pending our final determination of plaintiff's right to consequential damages in this situation. We further concluded that plaintiff's "actual loss" of rents could be measured in terms of the lease in effect at the time of the fire; we found that insufficient evidence was presented showing that this lease would not continue and therefore did not believe plaintiff's "actual loss" of rents presented a factual issue.

Accordingly, we submitted special interrogatories to the jury which addressed the remaining factual issues, a copy of which is attached hereto as "Appendix A." Questions 1 and 2 address the cost and period of repair immediately after the fire occurred. Out of concern that an increase in repair cost and time might otherwise be nonrecoverable due to exclusions in the policy, Insurance Policy, § VI(a) (This policy does not insure ... against loss occasioned directly or indirectly by enforcement of any ordinance or law regulating the ... construction, repair of buildings) and Loss of Rents Endorsement, § 6(a)(1) (same), each question was, in turn, broken into subparts which addressed the cost and period of repair in accordance with and without regard to applicable building codes and regulations. The jury found that the cost of repair immediately after the fire would be $255,000 and that the reasonable period of time necessary for such repairs would be six months; no distinction was found to exist in regards to whether such repair was or was not to be done in accordance with applicable building codes.

Questions 3 and 4 concern the present cost and period of repair. The jury found that if present repairs were conducted in accordance with applicable building codes and regulations, the repair cost would be $363,000, and the repair period, seven months. If repairs were accomplished without regard to applicable building codes and regulations, the jury concluded that the repair cost would be $308,000, and the repair period, 6 months.

In response to questions 5 and 6, the jury found that the plaintiff had not failed to mitigate his damages.

Finally, in answering interrogatories 7–10, the jury found that the defendant could not have reasonably foreseen, at the time the insurance contract was made, that as a result of the fire loss and defendant's denial of coverage: (1) plaintiff would lose rental income beyond the policy limits; (2) a reduction in the value of the land might occur; (3) plaintiff would receive and be unable to pay a bill for clean-up costs of the property after the fire; and (4) plaintiff would be unable to pay his mortgage on the property and would thereby incur interest penalties as well as attorney's fees in

seeking to prevent foreclosure on this mortgage.

Following receipt of these answers, we directed the parties to submit legal memoranda on the issue of plaintiff's entitlement to consequential damages. We also directed the parties to submit a stipulation as to the loss of rents for the six month period following the fire and for the six and seven month periods following the return of the jury's findings on damages. A copy of this stipulation has been received, and the parties have agreed, subject to defendant's objection to whether the existence of the lease forecloses the question of "actual loss," that for the six month period following the fire, the loss of rents is $32,907; for the six month period following the return of the jury's finding on damages, $39,-502; and for the seven month period following this return of findings, $45,561. We have also received the parties' legal memoranda.

*Discussion*

Resolution of this controversy is governed by principles of Pennsylvania law as we have jurisdiction pursuant to diversity of citizenship; plaintiff is a Pennsylvania resident and the defendant, an Ohio business corporation. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (federal court having jurisdiction through diversity of citizenship must apply substantive law of forum state).

We therefore look to Pennsylvania law in our analysis of what we perceive to be the seminal issue before us—whether or not the insurance agreement between the parties is a "contract to pay money" with damages for delay in payment being limited to interest. In so doing, we determine for various reasons that the insurance policy is such a contract, with interest providing the sole remedy for delay in payment.

First, we note that this Court has previously found a fire insurance policy to be a contract to pay money. In *Commercial Union Assurance Co. v. Pucci*, 523 F.Supp. 1310 (W.D.Pa.1981), a fire damaged the insureds'—the Puccis'—residence. This residence was insured against loss from fire by the plaintiff insurance compa-

ny, Commercial Union. Commercial Union declined to satisfy the Puccis' claim for damages to the property, though, because of a dispute as to who owned the property and who was therefore entitled to the insurance proceeds. Commercial Union paid the amount in dispute into the court registry and filed an interpleader action seeking a declaratory judgment as to who owned the property and should receive the proceeds of the insurance policy; the Puccis counterclaimed for breach of contract and punitive damages. *Id.* at 1312.

We found that the Puccis, alone, had a legal right to assert a claim against Commercial Union for the fire loss. *Id.* at 1315–17. A question then arose as to the value of the loss which the Puccis were entitled to recover. The Puccis claimed that they should receive not only the monetary value of the damage at the time of the loss, but also the increase in the cost of repair due to inflation, during the period from the time of the loss to the time judgment was rendered in their favor. *Id.* at 1319.

The policy specified that Commercial Union's liability for loss shall not exceed "the actual cash value of that part of the building structure damaged or destroyed." *Id.* Examining Pennsylvania law, we found that the Pennsylvania Supreme Court has construed such "actual cash value" to mean "what it would cost to replace a building or a chattel *as of the date of fire.*" *Id.* (citing *Fedas v. Insurance Company of Pennsylvania*, 300 Pa. 555, 562, 151 A. 285, 288 (1930)) (emphasis added). Therefore, we held that the Puccis were only entitled to recover the cost of repair as of the date of the loss. 523 F.Supp. at 1319.

More importantly, in further holding that the Puccis could instead recover interest for the delay in payment, we implicitly recognized the insurance policy as a contract to pay money:

Although the term "actual cash value" does not include the post-loss effects of inflation on the cost of repair, the Puccis are entitled to receive interest on the actual cash value to compensate them for the delay in the availability of the insur-

ance proceeds. *Cf. Formigli Corp. v. Fox*, 348 F.Supp. 629, 648 (E.D.Pa.1972) (*"[w]hen money is due a person under a contract* but is improperly withheld or unpaid by the defendant, the party to whom such money is due is entitled to interest from the time it was due"). *Id.* (emphasis added).

This position is consistent with the recognition by the Court of Appeals for the Third Circuit that "[u]nder a contract theory the insured is generally denied consequential damages for failure to pay the loss, because in a suit for money due under a contract, recovery is limited to the debt plus interest." *Polito v. Continental Cas. Co.*, 689 F.2d 457, 461 (3d Cir.1982) (citation omitted). It was further noted in *Polito* that some courts have awarded consequential damages for breach of insurance contracts due to failure to pay, based on reasoning that parties to insurance contracts do not have equal bargaining power and that insurance companies, if liability is limited to the amount of the loss plus interest, are encouraged to take advantage of the insured by delaying payments. *Id.* (citing *Reichert v. General Ins. Co. of America*, 59 Cal.Rptr. 724, 428 P.2d 860 (1967), *vacated on other grounds*, 68 Cal.2d 822, 442 P.2d 377, 69 Cal.Rptr. 321 (1968); *Asher v. Reliance Ins. Co.*, 308 F.Supp. 847 (N.D. Cal.1970); *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 392 A.2d 576 (1978)). However, the court held that New Jersey, whose law was being applied, had not thus far departed from the general rule excluding consequential damages. *Id.* We find that Pennsylvania has similarly appeared to adhere to the "contract to pay money" rule, and we do not believe that the Supreme Court of Pennsylvania would hold otherwise. *See Ciccarelli v. Carey Canadian Mines, Ltd*, 757 F.2d 548, 553 n. 3 (3d Cir.1985) (a federal court sitting in diversity must consider the decisions of the state's highest court to be the ultimate authority regarding state law, and in the absence of an authoritative pronouncement from the highest court of a state, a federal court must consider and give due regard to the decisions of state intermediate courts as well as other state courts as indicia of how the states' highest court would decide a matter).

Pennsylvania courts have long recognized that where, as here, an insurance company completely denies liability, an insured recovering a judgment against the insurer is entitled to prejudgment interest from the date of loss—the insurance contract being treated as contract to pay money, with interest serving to compensate for delay in payment. In *Eastern Associated Coal v. Aetna Cas. & Sur. Co.*, 475 F.Supp. 586, 594–95 (W.D.Pa.1979), *aff'd in part and rev'd in part*, 632 F.2d 1068 (3d Cir.1980), *cert. denied*, 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 843 (1981), the court indicated that Pennsylvania cases have treated fire insurance policies as contracts to pay money, with interest recoverable as damages for failure to pay on a given day. *J. Purdy Cope Hotels Co. v. Fidelity Phenix Fire Ins. Co.*, 126 Pa.Super. 260, 191 A. 636 (1937), was cited as the "basic case" in this regard. 475 F.Supp. at 594. In *Gardner v. Freystown Mut. Ins. Co.*, 350 Pa. 1, 37 A.2d 535 (1944), the Pennsylvania Supreme Court awarded prejudgment interest from the date of a fire giving rise to an insurance claim as damages for delay in payment, where the insurer had denied all liability. Later, the Superior Court of Pennsylvania again designated a fire insurance policy as a contract to pay money and indicated that interest serves as damages for delay in payment. *Samuels v. California Ins. Co.*, 192 Pa.Super. 484, 162 A.2d 48 (1960). Interest was also awarded as damages for delay in payment after breach of a fire insurance contract in *Berkeley Inn, Inc. v. Centennial Ins. Co.*, 282 Pa. Super. 207, 422 A.2d 1078 (1980).

■ We therefore find that the fire insurance policy before us is a contract to pay money, with respect to both the provisions for loss due to property damage and loss of rents. In each case, while factual issues existed concerning the precise amount of each such loss, the insurance policy provided guidelines for valuation of loss; therefore, the value of the loss was ascertainable at the time of the fire. *See Eastern Associated Coal supra.*

We note that plaintiff apparently would argue that he has circumvented this characterization by suing for both performance of the insurance policy—breach of a contract to pay money—as well as for damages resulting from the breach. Plaintiff's Brief at 7–8. We see this "distinction" as only begging the question of what constitutes the proper damages for the delay in payment resulting from a breach of a contract to pay money—interest or consequential damages?

Admittedly, though, beyond *Pucci* none of the aforementioned cases deal squarely with the issue of whether consequential damages are alternatively available where an insurer is found to have breached an insurance contract by denying liability. Indeed, while the insureds in Pucci were, in effect, seeking consequential damages beyond the amounts due under the policy, we did not specifically recognize their claim as one for "consequential damages." However, it is our opinion that even if the Pennsylvania Supreme Court were faced with the precise issue, it would not follow those courts which have awarded consequential damages for breach of an insurance contract.

As we previously indicated, the Court of Appeals for the Third Circuit has noted the trend in some courts to award consequential damages where an insurer was found to have breached an insurance contract by denying liability; such awards being intended to prevent the insurance companies having liability limits in their policies from taking unfair advantage of the insured by delaying payment in an attempt to obtain a compromise or settlement of the insured's claim. *Polito*, 689 F.2d at 461. This trend has also been acknowledged elsewhere. *See* 16A. J. Appleman, *Insurance Law and Practice*, §§ 8877.25 and 8878.35 (1987); Note, *The Availability of Excess Damages for Wrongful Refusal to Honor First Party Insurance Claims—An Emerging Trend*, 45 Fordham L.Rev. 164 (1976); Annotation, *Insurer's Liability for Consequential or Punitive Damages for Wrongful Delay or Refusal to Make Payments Due Under Contracts*, 47 A.L.R.3d 314 (1973). Plaintiff urges this Court to permit such damages in this case for the same reason—to discourage unsound demands of liability. Plaintiff's Brief at 5–10.

In Pennsylvania, though, neither this trend nor the related development in other jurisdictions of a cause of action in tort for bad faith on the part of insurance companies in denying claims has been adopted. *See* Note, *Extracontractual Insurance Damages: Pennsylvania Insureds Demand a "Piece of the Rock,"* 85 Dick.L. Rev. 321 (1981). Indeed, in examining this latter remedy for insureds, while Pennsylvania courts have recognized that insurance contracts are contracts of adhesion, *D'Ambrosio v. Pa. National Mut. Cas. Ins. Co.*, 262 Pa.Super. 331, 342 n. 3, 396 A.2d 780, 785–86 n. 3 (1978) (Jacobs, J., dissenting), and have been presented with arguments similar to those made here— that a tort cause of action for bad faith "is the only remedy which will prevent insurance industry abuse in handling first party claims, and which will place the consumer on more equal footing with insurers," *D'Ambrosio v. Pa. National Mut. Cas. Ins. Co.*, 494 Pa. 501, 505, 431 A.2d 966, 969 (1981), the Pennsylvania Supreme Court has specifically rejected attempts to create such a cause of action in tort. *D'Ambrosio*, 494 Pa. 501, 431 A.2d 966 (1981), *aff'g* 262 Pa.Super. 331, 396 A.2d 780 (1978).

We believe that the Pennsylvania Supreme Court would deny plaintiff's claim for consequential damages based on the same reasoning it offered in rejecting the proposed bad faith cause of action in *D'Ambrosio*. That reasoning focused on the Pennsylvania Unfair Insurance Practices Act which prohibits several "unfair claim settlement or compromise practices." 40 P.S. § 1171.5(a)(10). The Pennsylvania Supreme Court found that this Act and, in particular, the provisions of § 1171.5(a)(10) serve adequately to deter bad faith conduct on the part of insurers. *D'Ambrosio*, 494 Pa. at 505–08, 431 A.2d at 969–70. Thus, we conclude that the Pennsylvania Supreme Court would not look favorably upon plaintiff's similar arguments in this case, i.e. that an award of consequential dam-

ages is necessary to deter unsound denials of liability and delays in payment; again, the Pennsylvania Unfair Insurance Practice Act would already appear to serve as an adequate deterrent in that regard.

The lower court opinion in *D'Ambrosio* provides another factor which contributed to the rejection of the bad faith cause of action and which also works against plaintiff's damage claim here—the likelihood of higher insurance premiums if an insurance company is faced with increased liability anytime it disputes a claim:

> To overrule the demurrer in this case would be to place insurance companies into a situation wherein they would be risking a tort action every time they denied insurance coverage no matter how frivolous the claim. Such a situation would ultimately result in ever-increasing insurance premiums to the benefit of no one.

262 Pa.Super. at 333–34, 396 A.2d at 781. The same prospect arises if insurers would be in a situation wherein they could face consequential damages every time they denied an insurance claim, even if the denial is made in good faith.

■ In making this prediction as to how the Pennsylvania Supreme Court would rule on the seminal issue presented we are mindful of plaintiff's argument that the scope of damages available for breach of a contract to pay money need not be expanded to accommodate his demand for consequential damages. Plaintiff's Brief at 7. "Special damages" might be awarded for breach of a contract to pay money where the obligation to pay money is for a special purpose. In *Appeal of McDowell,* 123 Pa. 381, 16 A. 753 (1889), the defendant had agreed to provide plaintiff with the money necessary to carry out a building contract; when this agreement was breached and, as a result, the plaintiff incurred additional construction expenses, the defendant was held responsible for these losses in the measure of damages for the breach. Thus, even if a contract is one for payment of money, with interest supplying the usual measure of damages for delay in payment, the party aggrieved by the breach of such a contract may be entitled to special damages, in appropriate circumstances.

■ We find, however, that such special damages have not occurred here, and, in particular, that the breach of the insurance contract before us does not present the special circumstances giving rise to these damages. Again, such damages may be awarded when an obligation to pay money is for a special purpose. Plaintiff argues that the Insurance Policy was an agreement to pay money for a special purpose; that is, if plaintiff experienced a loss due to fire, he was entitled to the money necessary for the special purposes of repairing and replacing his damaged property as well as compensating for lost rental. Accordingly, where payment is delayed, resulting increases in repair costs and rental loss should be compensated. We disagree. While the value of plaintiff's loss and defendant's respective liability to plaintiff is measured in terms of repair and replacement costs and periods, plaintiff is not bound to use the insurance proceeds for actual repair and replacement.

In reviewing the policy in this case, we find that Nationwide has the option of undertaking actual repairs of the damaged property or paying plaintiff the monetary value of the loss, as set by the policy. *See* Insurance Policy, § II(11). Where payment of the loss is the chosen option, though, the insured may use the proceeds for any purpose—we cannot locate any provision of the policy which requires the plaintiff to apply the proceeds to repair of the damage giving rise to the claimed loss. Similarly, plaintiff's receipt of insurance proceeds under the Loss of Rents Endorsement is not contingent upon the plaintiff's actual repair of the Market Street property within a reasonable repair period. In other words, if the plaintiff receives insurance proceeds for loss resulting from damage to the property, he has no obligation to use these proceeds to cut his rental losses either— even if Nationwide had honored plaintiff's claim after the fire, plaintiff could have chosen not to repair whereby his rental losses would otherwise have continued to the present. Moreover, while a Loss of

Rents Endorsement is generally intended to provide a landlord with alternative income during a period of repair, the plaintiff is also not required to use the proceeds recovered under this endorsement for any specific purposes.

Thus, the insurance proceeds are not earmarked for a particular use and, more importantly, Nationwide, as insurer, does not know for what purpose the proceeds will be used. Hence, the proceeds cannot be said to be related to a special purpose. *See* 44 Am.Jur.2d *Insurance* § 1771 at 756 (1982) ("Ordinarily ... the plaintiff in an action on an insurance policy cannot recover, beyond what the law allows as interest, special damages for the refusal of the insurer to pay the loss or the detention of the money due the plaintiff."). Indeed, if the plaintiff here or any other insured were to receive damages for increases in repair cost and rental loss due to delay in payment, and if the plaintiff or another insured never intended from the time of loss to use the insurance proceeds for repair purposes, such a receipt of damages could be a windfall. We recognize that special damages might be recoverable if an insurer breaches an insurance contract in some other fashion—for example, by failing to defend or pay a judgment against the insured, *id.*; however, this is not such a case.

We note finally, in finding plaintiff's claims for consequential damages to be inappropriate, that in our opinion Nationwide acted in good faith in disputing plaintiff's insurance claim. The evidence presented at trial strongly indicated that arson was the cause of the fire and also that Mr. Giovannitti was experiencing financial difficulties at the time. This same evidence was available to Nationwide when plaintiff's claim was presented, and we believe Nationwide's suspicion that plaintiff may have been involved in setting the fire was not unreasonable. Moreover, plaintiff did not ever pursue at trial the claims of bad faith raised in his complaint at C.A. No. 86–270; plaintiff offered no evidence or argument that Nationwide's denial of liability was made in bad faith or, in particular, that Nationwide tried to take advantage of plaintiff's poor financial condition by delaying payment. Therefore, even if consequential damages should be awarded for purposes of deterring improper conduct by insurance companies, Nationwide's conduct here is not the type which should be subject to discouragement. Nationwide had a good faith dispute with Mr. Giovannitti, based on a reasonable suspicion and belief that plaintiff may have had a role in causing the fire.

Accordingly, we conclude that as damages for Nationwide's delay in payment plaintiff is not entitled to the consequential damages he claims, but rather prejudgment interest from the date of the fire. *See Berkeley Inn, supra* (prejudgment interest is recoverable from the date of the fire if the insurance company denies liability in total).

The only exception to this ruling concerns plaintiff's claim for recovery of clean-up costs associated with the bill he received from the City of Pittsburgh. We find that Nationwide expressly agreed to compensate plaintiff for these costs in the Insurance Policy. *See* Insurance Policy, § I (5) (Debris Removal). Thus, plaintiff's claim for damages in this regard derives directly from the policy in addition to its argued basis in consequential damages. Nationwide presents no argument to the contrary, even after we called this issue to the parties' attention. *See* Memorandum Order, dated April 18, 1988 (directing the parties to brief various legal issues including whether the bill which plaintiff received for clean-up costs is otherwise covered by Insurance Policy). Therefore, with respect to plaintiff's claims under the Insurance Policy, to which the prejudgment interest applies, we find, based on the jury's findings, that plaintiff is entitled to $291,902.00— $255,000.00, for the reasonable cost to repair and restore plaintiff's damaged property immediately after the fire (whether or not applicable building codes are followed); $32,907.00 for loss of rents during the reasonable period of repair following the fire (six months); and $3,995.00 for clean-up costs.

The next issue we face concerns the proper amount of prejudgment interest. Plaintiff argues that to the extent prejudgment interest is awarded, the court has discretion to set the rate of interest at an amount relevant to the particular circumstances of a case. In particular, plaintiff urges that we set the rate of prejudgment interest at thirteen and one-quarter percent, which is the interest rate which plaintiff was paying in connection with his second mortgage on the Market Street property. Nationwide argues that the Pennsylvania statutory rate of six percent per annum applies. 41 P.S. § 202.

As background, we note that the plaintiff had two mortgages on the Market Street property. The first was with Reliable Savings & Loan Association ("Reliable"), at an interest rate of nine and three-quarters percent. This Reliable mortgage was referred to in the Insurance Policy. Reliable was named "mortgagee" in Item 7 of the Declaration; such listing corresponding to the "standard mortgage clause" at § I(19) of the Insurance Policy, which provides that "[l]oss to buildings shall be payable to the named mortgagee as interest may appear," and further that the interest of the mortgagee shall not be affected by any act or neglect of the plaintiff, as mortgagor. Where Nationwide contests its liability to an insured but pays the mortgagee for its loss, this clause states that Nationwide shall be subrogated to the rights of the mortgagee to the extent of such payment.

The second mortgage on the property was with Landmark Savings & Loan Association ("Landmark"). This Landmark mortgage bore an interest rate of thirteen and one-quarter percent. No reference is made to it in the Insurance Policy.

· Following the fire, plaintiff stopped making the payments due under these mortgages, apparently because of his financial inability to do so. Thereafter, Reliable secured a judgment against him for $66,-032.12—the unpaid balance due under the Reliable mortgage. Nationwide satisfied this judgment in May of 1985 pursuant to its obligations under the standard mortgage clause in the Insurance Policy and, as a result, took an assignment of Reliable's mortgage interest. *See generally* Plaintiff's Petition to Require Payment of Sums in Excess of Mortgage, ¶¶ 2–5.

In arguing for a prejudgment interest rate of thirteen and one-quarter percent, plaintiff contends that it would be unfair for him to receive six percent interest in the amounts due him when his financial obligations relative to the Market Street property carry a maximum thirteen and one-quarter percent interest rate. Plaintiff cites *Peterson v. Crown Financial Corp.,* 661 F.2d 287 (3d Cir.1981), as authority for the position that we have discretion in determining the prejudgment interest rate.

In reviewing *Peterson,* though, we find that the plaintiff has misapplied the reasoning of the Court of Appeals for the Third Circuit. Indeed, *Peterson* supports Nationwide's position; the circuit court states: "We agree with the district court that, under Pennsylvania law, prejudgment interest in the ordinary suit for contract damages is limited to the six percent legal rate." 661 F.2d at 292. The court did hold that discretion may be used to determine a prejudgment interest rate in cases where an equitable remedy such as restitution is sought, *id.* at 295; however, the case *sub judice* involves nothing more than an ordinary suit for contract damages. In particular, as we previously concluded, this case involves an action for breach of a contract to pay money, with interest providing the measure of damages for delay in payment.

■ Accordingly, we have no discretion in this case, and plaintiff is only entitled to prejudgment interest at the rate of six percent per annum. *Peterson,* 661 F.2d at 292–93. *See Benefit Trust Life Ins. Co. v. Union Nat. Bank,* 776 F.2d 1174 (3d Cir. 1985) (insurance contract).

The last issue we face derives from Nationwide's payment of the balance due under the Reliable mortgage and additional costs associated therewith. Nationwide requests a set-off or credit for the $66,032.12 it paid to Reliable, as well as a $22,750.32 payment it made on September 9, 1987, for delinquent taxes owing on the property and $25,343.07· for interest accruing on the

mortgage since the time Nationwide satisfied the judgment against the plaintiff. Defendant's Brief, 4–5. Plaintiff argues in this regard that Nationwide is not entitled to any reimbursement or credit for these payments, since Nationwide acted voluntarily to protect its own interests. Plaintiff's Brief, 22–23. Plaintiff further contends the amounts claimed by Nationwide above and beyond its payment of the balance due on the Reliable mortgage are consequential damages to which plaintiff is also entitled. *See* Plaintiff's Petition to Require Payment of Sums in Excess of Mortgage, ¶ 11.

■ We find first that Nationwide is entitled to a set-off or credit for its payment to Reliable for the balance due under the mortgage. While the standard mortgage clause in the policy serves to create two separate insurance contracts—one in favor of the plaintiff and the other in favor of Reliable as mortgagee, *Taylor v. Seckinger*, 199 Pa.Super. 262, 184 A.2d 317 (1962), it does not permit two complete recoveries for the same loss. This clause, in effect, simply requires that payment of the loss be made first to the mortgagee to the extent of his interest and the balance of the loss, if any, be paid to the mortgagor. *See Grady v. Utica Mut. Ins. Co.*, 69 A.D.2d 668, 673, 419 N.Y.S.2d 565, 569 (2d Dept. 1979). Thus, "an insurer which, although disclaiming liability to the mortgagor, made a payment to the mortgagee and took an assignment of an interest in the mortgage, would be entitled to have such payment credited on a judgment obtained by the mortgagor for full amount of the policy." 6 J. Appleman, *Insurance Law and Practice* § 4008 at 738 (1979).

■ We find that Nationwide is similarly entitled to credit for the delinquent taxes it paid with respect to the mortgaged property. Plaintiff's claim that he was entitled to these payments as consequential damages is without merit in light of our previous conclusion that plaintiff has no right to consequential damages in this action. We recognize that by virtue of the jury's finding that Nationwide is liable to plaintiff under the policy, Nationwide's payment of the balance due on the Reliable mortgage

is deemed full satisfaction of that mortgage. *Taylor*, 184 A.2d at 319 ("If the circumstances are such that the [insurance] company would be liable to the owner under the policy, a payment to the mortgagee would be in relief of the mortgage debt. . . ."). Therefore, Nationwide's payment of the tax due on the property *in effect* occurred after the mortgage was satisfied and at a time when no mortgagee interest existed. Accordingly, Nationwide's payment of the taxes has served to benefit the plaintiff alone; the taxes were plaintiff's obligation, and Nationwide has been found to have had no interest to protect at the time the payments were made. Of course, prior to the jury's finding on liability, the exact effect of Nationwide's payment to Reliable was unclear; if Nationwide had prevailed at the trial, it would have been subrogated to Reliable's interest as mortgagee. *Id.* Thus, Nationwide was acting to protect its own potential interests in paying the taxes and thereby preventing a treasurer's sale. However, we do not believe this motivation for payment to be relevant. The tax payments arose from a *bona fide* dispute over plaintiff's entitlement to insurance proceeds and, by virtue of Nationwide's liability to the plaintiff, have benefitted the plaintiff in relieving obligations running to him alone in connection with the insured property. Under such circumstances, we believe Nationwide should receive credit for the tax payments as well.

■ We conclude otherwise with respect to the defendant's claim for interest running on the mortgage since the time it paid Reliable. As previously mentioned, the jury's finding that Nationwide is liable to plaintiff under the policy works to make Nationwide's payment to Reliable a satisfaction of the mortgage debt. Thus, no debt remained upon which interest could run; the mortgage has in effect been cancelled as of the date Nationwide's payment to Reliable was made. Therefore, the defendant's claim for a set-off with respect to such interest will be denied.

In sum, we conclude that the plaintiff, Francis Giovannitti, is entitled to recover

$291,902.00 under the terms of the policy based on the loss caused by the fire. Crediting Nationwide $88,782.44 for the Reliable mortgage and tax payments it made ($66,032.12 + $22,750.32) yields a final figure of $203,119.56 for which Nationwide is liable to plaintiff under the policy. As damages for delay in payment, plaintiff is entitled to six percent interest per annum from the date of the fire—August 21, 1984. This interest is to be calculated with respect to a principal amount due of: (1) $291,902.00 from August 21, 1984 to May 1, 1985 (the approximate date the Reliable mortgage was satisfied); (2) $225,869.88 ($291,902.00 − $66,032.12) from May 1, 1985 to September 9, 1987 (the date the delinquent tax payments were paid); and (3) $203,119.56 ($225,869.88 − $22,750.32) from September 9, 1987 to March 23, 1988 (the date the liability judgment was rendered in favor of plaintiff). Plaintiff is further entitled to post-judgment interest at six percent per annum—the legal rate under Pennsylvania law. 41 P.S. § 202.

An appropriate order will issue.

## APPENDIX A

### SPECIAL INTERROGATORIES

1. What would be the reasonable cost to repair and restore the plaintiff's premises at 439 Market Street (hereinafter called "the premises") with materials of like kind and quality, immediately after the fire occurred?

    a. In accordance with applicable building codes and regulations. $ 255,000

    b. Without regard to applicable building codes and regulations. $ 255,000

2. What would be the reasonable period of time needed to make these repairs, from start to finish immediately after the fire?

    a. In accordance with applicable building codes and regulations. 6 (Time Period)

    b. Without regard to applicable building codes and regulations. 6 (Time Period)

3. What would be the reasonable cost to repair and restore the premises with materials of like kind and quality, at present?

    a. In accordance with applicable building codes and regulations. $ 363,000

    b. Without regard to applicable building codes and regulations. $ 308,000

4. What would be the reasonable period of time needed to make such repairs and restoration, from start to finish, at present?

    a. In accordance with applicable building codes and regulations. 7 (Time Period)

    b. Without regard to applicable building codes and regulations. 6 (Time Period)

5. Was it reasonably possible for the plaintiff to mitigate, that is reduce, the cost of present repairs?

    Yes___ No ✓

6. If your answer to question 5 was yes, by how much did plaintiff's failure to mitigate damages increase the cost of present repairs?

    $_____

If your answer to question 5 was no, go on to question 7.

7. Could the defendant have reasonably foreseen at the time the insurance contract was made that the plaintiff would lose rental income beyond the limits of policy if the defendant breached the insurance contract after a fire loss.

    Yes___ No ✓

8. Could the defendant have reasonably foreseen at the time the insurance contract was made that a reduction in the value of the land might occur if the defendant breached the insurance contract after a fire loss?

    Yes___ No ✓

9. If your answer to question 8 was yes, what was the value of the land just after the fire, and what is the value of the land today?

    Value of land after fire $_____
    Value of land today $_____

10. Could the defendant have reasonably foreseen at the time the insurance contract was made that the plaintiff would receive and be unable to pay a bill for clean-up

costs associated with the premises if the defendant breached the insurance contract after a fire loss?

Yes___ No _✓_

11. Could the defendant have reasonably foreseen at the time the insurance contract was made, that the plaintiff would be unable to pay his mortgage on the premises and would thereby incur interest penalties as well as attorney's fees in seeking to prevent foreclosure on this mortgage?

Yes___ No _✓_

*Josephine Deli*

*Paul R. McHil*

*Jhy S. Noftz*

*Theora Haney*

*Thelma Conn*

*Helen Edwards*

4-13-88
**Date**